ISAAC CARPENTER and ALFRED A. SUTTON v. MARY G. WARD.

A party who cross-examined a witness as to a collateral matter, is con-
cluded by his answers. He can not draw out collateral statements from
the witness, and for the purpose of discrediting him, show that on some
other occasion he stated differently.

To entitle the examining counsel to show the discrepancy, for the purpose
of impeaching the credibility of the witness, it must either appear that
the testimony related to a point *material* to the issue on trial, or to a fact
brought out on the examination of the adverse counsel.

THIS is an appeal by the defendant from a judgment of
the supreme court, in the second district, in favor of the
plaintiff, affirming a judgment entered on the report of a
referee. The action was brought to recover the value of a
quantity of lumber and coal, alleged to have been sold and
delivered to the defendant by the plaintiffs, and was tried
before a referee, by whom the following facts were found:
That the plaintiffs, during the year 1854, were coal and
lumber merchants at White Plains; and from June, 1854,
to January, 1855, the defendant was the owner of certain
real estate, situate in the town of Scarsdale, known as the
DeLancey property. In the fall of 1854 an addition was
built to the house on said real estate, and the barn repaired.
The addition was built and repairs made by one Hanbold,
pursuant to the direction of William Ward, the brother
of the defendant, and her general agent, having power to
contract debts for her during the years 1853 and 1854.
Hanbold obtained the lumber with which the additions and
repairs were made from the plaintiffs' yard, between the
8th and 21st of October, 1854; and it was worth $132.73.
Hanbold, on at least two previous occasions, had obtained
lumber of the plaintiffs, by the direction of the defend-
ant's general agent, once upon a written, and once upon a
verbal order, which was used in the repairs upon the
defendant's property, and for which the plaintiffs were
paid. That in November, 1854, the plaintiffs sold and

delivered coal to the defendant of the value of $24.61, and upon these facts the referee ordered judgment in favor of the plaintiffs for the amount claimed. On the trial of the cause before the referee, the defendant contested her liability to pay for the lumber, and sundry questions were raised. The general features of the case, as disclosed by the evidence, are as follows: The defendant was the owner of certain real estate in Scarsdale, Westchester county, known as the DeLancey property, between June, 1854, and January, 1855; and her brother, William Ward, was, during the years 1853 and 1854, and still is, her general agent, with power to contract debts for her. In the fall of 1854, William Ward, the agent, directed a man by the name of Hanbold to put the house and barn on the DeLancey property, owned by the defendant, in order and repair. In pursuance of this direction, Hanbold procured of the plaintiffs, lumber for that purpose, and with it put an addition to the house and repaired the barn. The lumber thus obtained was charged on their books by the plaintiffs to William Ward, and he afterwards recognized the bill, and agreed to pay it. During the time that the addition to the house and repairs to the barn were going on by Hanbold, the defendant was at home and had knowledge of the fact, and made no inquiry or objection. There were divers exceptions to the admissions of evidence, but they were of no importance, except two, the facts in regard to which are sufficiently stated in the opinion of the court. There was also a motion to non-suit, at the close of the plaintiffs' testimony, which was renewed at the close of the case. Both motions were denied, and the defendant in each case excepted.

The theory of the plaintiffs' case was that the lumber and coal in question were procured under the authority and direction of the plaintiffs' general agent by Hanbold, instructed to procure them by such agent. The existence of such general agency was admitted on the trial. The instructions by the general agent to Hanbold were sworn

to by the latter and not contradicted by Ward, the general agent, who was sworn as a witness on the trial. It was further shown that the lumber was applied to the construction or repair of buildings on real estate owned by the defendant.

*John H. Reynolds*, for the plaintiffs (respondents).

*Samuel E. Lyon*, for the defendant (appellant).

HOGEBOOM, J. I discover only two exceptions in this case which require special remark. The first is that taken to the ruling of the referee in excluding Exhibit C, which is the examination of the witness Hanbold on a former occasion in supplementary proceedings. At that time he testified that neither William Ward nor the defendant was in anyway or manner interested with him in the manufacture of powder at the Bronx River Powder Mills in the county of Westchester. This was supposed to be inconsistent with what he had testified to on the trial of the present cause, to wit: that he was at the time of obtaining the lumber in question managing the powder works *with Miss Ward*. But to entitle the examining counsel to show this discrepancy for the purpose of impeaching the credibility of the witness, it must either appear that the testimony related to a point *material* to the issue or trial, or to a fact brought out on the examination of the *adverse counsel*. It was neither. It was unimportant to the case to show whether Miss Ward had or had not any business connection with Hanbold in regard to the powder works. Such a fact could neither charge nor discharge the defendant with or from liability for the lumber; which liability rested upon the purchase of the lumber by the supposed authority of the general agent and its application to buildings of which she was confessedly the owner. The proposed contradiction was therefore to a collateral fact. It was further a fact drawn out on the examination of the

defendant's counsel, and not being material in itself to the issue joined in the action the answer of the witness was not open to contradiction. The impeachment of the witness does not come within the rule quoted by the defendant's counsel, which is as follows. "The credit of a witness may be impeached by proof that he has made either verbal or written statements out of court contrary to what he swears at the trial, provided he has been previously cross-examined as to such alleged statements, and provided that such statements are upon a point material to the question in issue." (2 Phillip's Evidence, Edwards' edition, 958. *Patchin* v. *The Astor Mutual Ins. Co.*, 3 Kernan, 268.)

The other exception was to the ruling of the referee allowing, on the application of the plaintiffs, certain testimony to be stricken out which the plaintiffs had themselves offered, and which the referee had received under objection, but not under exception. This testimony related to the *declarations* of the defendant's agent that he had paid for certain bills of lumber procured on a former occasion by Hanbold on the authority of such agent. Strictly speaking, perhaps, such declarations, not being within the direct scope of the agency, nor made in the execution of the agency, might be regarded as of doubtful propriety. But no exception was taken to the decision of the referee allowing them to be introduced in evidence. They were therefore not open to review in this court. But the plaintiff supposing them to be incompetent subsequently asked to have them struck out, and the referee granted the motion, and the defendant excepted to the decision. I do not think this was error. The testimony, if it had remained in the case, though in its effect prejudicial to the defendant, was not open to any allegation of error on her part. Its subsequent exclusion could not work her any legal injury. It is said, however, that by its introduction the defendant had acquired the right to impeach Hanbold in reference to the subject matter of it, which right was impaired and destroyed by its subsequent exclusion. But to this view

there are I think two answers: 1st. that there is no evidence contradicting Hanbold on that point; and 2d. That the right to impeach Hanbold was by the referee expressly reserved to the defendant.

The other exceptions are of minor importance, and are not well taken. And some of them are not only untenable but frivolous.

The motion for a non-suit was properly overruled; there being sufficient evidence for the consideration of the referee. The other exceptions require no remarks. The judgment should be *affirmed*.

WRIGHT, J. The facts found by the referee fully justified the judgment. In October, 1854, the defendant was the owner in fee of certain real estate in the county of Westchester known as the DeLancey property. An addition was built to the house upon the property, and the barn thereon repaired. One Ernst F. Hanbold erected the addition and made the repairs, by direction of William Ward, a brother of the defendant; who during the years 1853 and 1854 was the general agent of the defendant, having power to contract debts on her account. Hanbold obtained the lumber with which the addition and repairs were made, from the yard of the plaintiffs, who were coal and lumber merchants, at White Plains; and the lumber so obtained was of the value of $132.73. Between the 2d September 1854 and the 9th November 1854, the plaintiffs' sold and delivered coal to the defendant, and at her request, amounting in value to the sum of $24.61. It cannot be plausibly pretended, upon these facts, that the plaintiffs' were not entitled to recover the amount of the lumber and coal bill.

Thus the case stood upon the facts found by the referee. The defendant, however, moved for a non-suit upon the whole case, which may raise the question in this court whether there was *any* evidence tending to establish the facts found. On this point there is no difficulty whatever. It was conceded that the charge for coal was right; and

the lumber bill, only, was disputed. It was admitted by the defendant that she was the owner of the DeLancey property between June 1854 and January 1855, and that William Ward, her brother, during the years 1853 and 1854, was, and at the time of the trial still was, her general agent and had power to contract debts for her. It was shown that in the fall of 1854, William Ward, the agent, directed a man named Hanbold to put the house and barn on the DeLancey property, owned by the defendant in repair. In pursuance of this direction, Hanbold procured of the plaintiffs lumber for that purpose, (which is the lumber bill in question,) and with it put an addition to the house and repaired the barn. The defendant was at home at the time, and had knowledge of the fact that these improvements were going on, on her property, and made no enquiry or objection. Hanbold was the principal witness on the part of the plaintiffs in respect to the circumstances under which the lumber was purchased and put upon the house and barn and he testified to the express direction of William Ward, the defendant's agent, to him, to make the improvements—the procuring of the lumber from the plaintiffs for the purpose, and the subsequent recognition by the agent, of the correctness of the bill; and although Ward himself was sworn as a witness, there was no attempt to contradict Hanbold in what he testified to as to Ward's directions to make the improvements, or to disprove Ward's agency. There was, therefore, not only slight, but abundant evidence, if credited, to justify the referee's findings of fact, and his refusal to non-suit. Indeed the defence was principally confined to an attempt to discredit the plaintiffs' witnesses, without offering, or attempting to offer any affirmative proof in denial of Ward's agency in the management of the defendant's estate, or his direction to Hanbold to make the improvements; nor that in pursuance of these directions, Hanbold procured the lumber in dispute from the plaintiffs, and made the repairs as he was directed, with full knowledge of the defendant.

. On the cross-examination of the plaintiffs' witness Hanbold, by the defendant's counsel, he was made to testify that he was managing the powder mill works on the Bronx river with the defendant at a time anterior to the repair of the house and barn on the DeLancey property, and that he had got lumber from the plaintiffs, on two several occasions, by direction of Mr. Ward, for repairing the powder mill and the dam; that Ward, as the agent of the defendant, bought the salt petre to make the powder, and it was understood that the witness and the defendant should divide the profits; and he believed they were so interested together at the time the lumber in question was bought of the plaintiffs. · The defendant's counsel then proposed to introduce in evidence an affidavit of Hanbold, purporting to have been taken by the county judge of Westchester, on the 20th of November, 1854, on some occasion not disclosed, in which it was stated that the defendant was never in any way or manner concerned or interested with him in the manufacture of powder at the Bronx River Powder Mills; that in April, 1852, the defendant purchased the powder works at public auction, since which time the affiant had been the lessee of the works, and William Ward, acting as the attorney of the defendant, had made him frequent advances of money and merchandize, which he had from time to time in part repaid, with interest thereon; and that Ward's connection with him was entirely of a friendly and neighborly character. This paper was objected to as evidence, and ruled out by the referee. The question was properly decided. The only object of introducing the paper was to show that Hanbold, on some occasion, in court or out of court, as late as November, 1854, had stated that the defendant had no interest whatever, or never had, in the powder mill business, with the view of impeaching the credibility of the witness. This could not be done. A party who examines a witness as to a collateral matter, (and this was clearly so,) is concluded by his answers. He can not draw out collateral statements from the witness,

and, for the purpose of discrediting him, show that on some other occasion he stated differently.

It appears that when Hanbold got the lumber from the plaintiffs, Ward, the agent, was absent. After his return, and after the lumber had been obtained and put into the defendant's buildings, with her knowledge, and without inquiry or objection, Hanbold had a conversation with Ward in respect to the transaction, which was proved by the plaintiffs, and objected to by the defendant as irrelevant, but no exception was taken to the ruling of the referee. At a subsequent stage of the case the plaintiff moved to strike out the evidence of the declarations of Ward made after the lumber and coal had been delivered. This motion was resisted by the defendant, and granted by the referee, and the defendant excepted. The exception is frivolous. The motion itself was entirely unnecessary; for although the evidence may have been improper when received by the referee, there was no exception taken by the defendant to its admission. Whether the referee had or had not power to strike out the testimony, the exception can not avail the defendant, as it was evidence in favor of the plaintiffs, and she could not be prejudiced by the exercise of the power. Remaining on the record could not possibly have helped the defendant's case; and if prejudicial, had it remained she could have made no question in respect to it, as there was no exception to its admission. I entertain no doubt, however, that the referee had the power, under the circumstances in which it was exercised, to grant the motion.

The judgment should be *affirmed.*

All the other judges concurring, judgment affirmed.