(39 Misc. Rep. 389.)

GOLDIE v. GOLDIE.

(Supreme Court, Special Term, Erie County.    December 26, 1902.)

**1. DIVORCE—ADULTERY—EVIDENCE—SUFFICIENCY.**
Evidence in an action for divorce examined, and *held* sufficient to support a finding that the husband had been guilty of adultery.

**2. SAME—EVIDENCE IN REBUTTAL.**
In an action for divorce, where a witness had testified that he had seen defendant with co-respondent in a certain house, it was error to exclude testimony as to whether it was possible for witness to have seen defendant from the positions he testified that each was in at such times.

**3. SAME—SPECIFIC DENIAL BY DEFENDANT.**
Under Code Civ. Proc. § 831, making a husband a competent witness "to disprove the allegation of adultery," it was error, in an action for divorce, to refuse to allow defendant to deny specifically the charge of adultery.

**4. SAME—TESTIMONY OF COMPANION.**
Where, in an action for divorce, defendant was charged with adultery on a certain visit to a house of prostitution, it was error to refuse to allow defendant's companion to testify whether he had seen defendant have sexual intercourse with any woman on such occasion.

**5. SAME—OTHER OFFENSES.**
In an action for divorce, charging specific acts of adultery in a house of prostitution, evidence that defendant had on other occasions visited another house of prostitution, and committed adultery with a woman other than the co-respondent named, was inadmissible.

**6. SAME—TRIAL TERM—DENIAL OF JUDGMENT—GROUNDS.**
Under Code Civ. Proc. § 1229, providing that, in an action for divorce, judgment cannot be taken of course upon a referee's report, and that where a reference is made the testimony and other proceedings must be certified to the court by the referee with his report, and judgment rendered by the court, the special term is not authorized to deny judgment because of errors committed by the referee in the reception and exclusion of evidence.

Action by Jessie L. Goldie against William Goldie, Jr., for divorce. Judgment for plaintiff.

See 79 N. Y. Supp. 268.

Hammond & Diebold, for plaintiff.
Sullivan & Spaulding, for defendant.

KENEFICK, J.    The referee has found that the defendant committed adultery with one Cora Allen, at a house of prostitution conducted by her, on three occasions, viz., May 14, May 17, and May 18, 1901. The evidence to sustain such findings was furnished by four young men, who, at the request of plaintiff's attorney, and out of friendship for him, watched the movements of the defendant on the dates mentioned and for some time prior thereto.    The defendant admitted that on each of the aforementioned dates he visited the house of the co-respondent, denied that on any of said occasions he saw the co-respondent, and negatived, so far as he was permitted by the referee, to do so, the commission of adultery with the co-respondent or any other woman.    A brief rehearsal of the testimony will show that the charge of adultery was very sharply contested.    As to the first occasion, the

¶ 5. See Divorce, vol. 17, Cent. Dig. §§ 371, 374.

testimony for the plaintiff is that the defendant, accompanied by another man, was driven to the house of co-respondent, and entered there about 2 o'clock a. m.; that a watch was maintained outside the house until one o'clock p. m., and that neither the defendant nor his companion emerged therefrom during that time; that the carriage was driven away about 3 o'clock a. m., but that no one was in it; that two of the witnesses entered the house about 2:30 o'clock a. m., and remained there until 12:30 p. m., each of them going to bed with a female inmate of the house; that neither witness saw the defendant in the house, but one of them says that about 8 o'clock a. m. he saw in the co-respondent's bedroom a coat and hat which he identifies as the property of the defendant. The defendant and his companion testify that they entered one of the parlors of the house, drank some wine there with some of the inmates, remained there about one hour, and then left the house, re-entered their carriage, and drove to their hotel. The defendant testifies that about 10:30 a. m. he obtained money at the bank to pay his employés, and he and his bookkeeper testify that at 11:30 a. m. he was at his place of business. As to the second occasion, the testimony for the plaintiff is that the defendant, accompanied by another man, was driven to the house of the co-respondent, and entered there about two o'clock a. m.; that a watch was kept outside the house until 5 o'clock a. m., and neither the defendant nor his companion left the house during that time; that the carriage was driven away before 3:30 o'clock a. m.; that two of the witnesses entered the house about 2:30 a. m., one remaining but a short time, and the other going to bed with a female inmate and remaining there until about 7 o'clock a. m. None of the witnesses saw defendant in the house that night. The defendant and his companion testify that they entered a parlor of the house, drank there with some of the inmates, remained there about an hour, and then left the house, re-entered their carriage, and were driven away,—the former to his hotel, the latter to his home. As to the third occasion, the testimony for the plaintiff is that the defendant, accompanied by the co-respondent, was driven to her house, and entered there about 3:30 o'clock a. m.; that a watch was kept outside the house until about 4 o'clock a. m., and the defendant did not emerge therefrom; that in the interval the carriage was driven away with no one in it; that one of the witnesses entered the house shortly after the defendant went in, and remained there until 1 o'clock p. m.; that this witness was first shown to the Turkish room, and while there the co-respondent came in; that while she was there the witness stepped out of the door of that room into the hall, and saw the defendant standing in the door of the music room; that a little later the witness accompanied a female inmate to her room, on the second floor, and that while in the hall upstairs, near her room, he saw the defendant and the co-respondent standing at the door of the latter's bedroom, and then enter the room; that the witness slept with his female companion, and arose about 9 a. m., and, going out in the hall for some purpose, he saw the co-respondent leave her room, clothed in a nightdress; that later in the morning the witness saw the defendant lying asleep in bed in the co-respondent's room. The defendant says that he went to the house on this occasion with

two men; that they went in the Turkish room, drank there with some of the women inmates, and left in about an hour, re-entered their carriage, and were driven to the hotel. One of his alleged companions on this visit is called as a witness, and corroborates the defendant as to what occurred. As to the first two visits, it will be observed that, aside from the fact of his entering such a resort, there is very little to establish the commission of the adultery found by the referee. The evidence as to what happened on the third visit presented a fair question of fact, and would have justified a finding either of guilt or innocence.

It is urged by the defendant that upon the trial the referee excluded competent evidence which would have inured to his advantage in the determination of the case, and that certain other evidence was improperly allowed in the case, which worked to his injury. Let us review the errors alleged to have been made by the referee:

A witness was called by the defense, whose knowledge of the interior arrangements of the house was shown, and she was asked if she had observed whether one could see the door of the music room from any place in the hall in front of the Turkish room. This question was excluded, and an exception taken. Then she was asked if it was possible to see one of these points from the other, and this, too, was excluded under objection. An architect who had made a plan of the house at defendant's request was called, and substantially the same questions were put to him and excluded. This architect was also asked whether it was possible to see the entrance to the co-respondent's bedroom from any point in the hall upstairs opposite the bathroom door, or opposite the rear left-hand bedroom. This was also excluded under objection. This testimony was offered to contradict the testimony of the plaintiff's witness that on the third visit he saw the defendant at the points indicated. I cannot understand why this testimony was rejected. It bore directly on the truthfulness of the most material testimony in the case, and was entirely competent. Again, defendant was asked specifically whether he committed adultery with the co-respondent or any other woman on any of these visits; and this question, put in various forms, was each time ruled out, on the ground, as stated by the referee, that it was a conclusion of law. Whether he did or did not was a fact, and he should have been permitted not only to show what he did, thus raising the inference of innocence, but he also should have been allowed to deny, specifically and in terms, the charge of adultery. He is made a competent witness "to disprove the allegation of adultery." Code Civ. Proc. § 831. And I cannot conceive how he could make his denial so emphatic as by a negative answer to the question as thus framed. He had the right to have his express denial of these charges before the referee for his consideration in the decision of the case. Stevens v. Stevens, 54 Hun, 490, 8 N. Y. Supp. 47. His companion on the first visit was asked whether he saw the defendant have sexual intercourse with any woman on this occasion, and this question was excluded under objection. These rulings were erroneous.

Finally by far the most serious error remains to be considered. Plaintiff was permitted to show that the defendant on three occa-

sions prior to those above specified visited another house of prostitution, kept by one Miss Preston, and evidence was given tending to establish that on two of.these occasions he had committed adultery with Miss Preston. This evidence was received, not to sustain any of the specifir acts of adultery charged in the complaint, but to prove the intent with which he visited the house of the co-respondent. This evidence was offered and received under the authority of Carpenter v. Carpenter, 9 N. Y. Supp. 583. That was an action for divorce, where the issues were framed and sent to a jury for trial. The trial court permitted the plaintiff to show visits of the defendant to houses of ill fame other than those in which adultery was found to have been committed, and his lewd conduct therein. The general term sustained the ruling, stating that:

"The evidence showed the habits and inclinations of the defendant, and bears upon the probability of the evidence in support of the specific charges found to be true. In Van Epps v. Van Epps, 6 Barb. 320, evidence of the dissolute conduct and habits of the defendant was held to be corroborative of the evidence of guilt in the instance specified in the complaint."

The court seems to have overlooked two earlier decisions holding a contrary doctrine: Beadleston v. Beadleston (Sup.) 2 N. Y. Supp. 809; Stevens v. Stevens, 54 Hun, 490, 8 N. Y. Supp. 47. In the Beadleston Case, improper conduct with a person other than the co-respondent named was permitted on the trial, to show inclination on the part of the defendant to commit adultery. The appellate court says (page 811, 2 N. Y. Supp.):

"This evidence was not proper for this. purpose, for the defendant was not. being tried for her general conduct or inclinations, but on specific charges. It has no tendency to establish either of these charges, or to prove the fact that adultery had been committed by the defendant with either of the other persons mentioned in the complaint. It could not be logically urged, because the defendant had been familiar in this manner with Armstrong, and had accepted these demonstrations of attachment from him, that she was guilty of adultery with either of such persons."

The same class of evidence was allowed in the trial of the Stevens Case, supra. The general term ruled that it was improperly received, stating (page 492, 54 Hun, and page 48, 8 N. Y. Supp.) that:

"Acts of adultery not charged cannot be proved. Germond v. Germond, 6 Johns. Ch. 347, 10 Am. Dec. 335. The same principle would exclude evidence of conduct leading towards such acts, or indicating a willingness to commit such acts, or, in other words, a lustful disposition."

The Beadleston and Stevens Cases were followed by the general term of the superior court of Buffalo in the case of Davis v. Davis, 4 Misc. Rep. 454, 24 N. Y. Supp. 1151, affirmed without opinion in 150 N. Y. 571, 44 N. E. 1123. The ruling in the Carpenter Case seems to be based upon the Van Epps Case, supra. An examination of the Van Epps Case shows that no such principle was enunciated there, and a casual statement at the close of the opinion is seized upon to sustain the admission of such testimony. I feel justified, therefore, in rejecting the authority of the Carpenter Case, and in following the other cases cited. The furthest that the cases go, aside from the Carpenter Case, is to hold that improper familiarities and acts of adultery other than those charged in the complaint, committed with

the particeps criminis named in the complaint, may be proved to show adulterous intent on the part of the defendant toward such particeps criminis. Lockyer v. Lockyer, 1 Edm. Sel. Cas. 107; Anon., 3 Abb. N. C. 161; Smith v. Smith (Com. Pl. N. Y.) 13 N. Y. Supp. 817; Thayer v. Thayer, 101 Mass. 111, 100 Am. Dec. 110. Can it be said that this objectionable evidence did not influence the decision arrived at? In the Beadleston, Stevens, and Davis Cases, supra, the admission of such testimony caused a reversal of the judgment of the trial courts. Here we have such improper evidence operating upon the mind of the referee, and also we have highly material evidence excluded from his consideration. I am of the opinion that these rulings are erroneous; that they indicate that a fair trial was not had, and afford a reasonable doubt as to the justice of the result, and upon appeal will constitute reversible error.

The question presented here is whether this court is authorized to deny judgment because of substantial errors committed by the referee in the reception and exclusion of evidence. The section of the Code of Civil Procedure under which this application is made (1229) provides:

"In an action to annul a marriage, or for a divorce, or separation, judgment cannot be taken of course upon a referee's report. * * * Where a reference is made in such an action, the testimony and other proceedings upon the reference must be certified to the court by the referee with his report; and judgment must be rendered by the court."

The power of the court under this section is not yet clearly settled. Many of the earlier cases held that this power was conferred upon the court merely as a safeguard against fraud or collusion, or failure to comply with the various statutory requirements as to the conduct of actions for divorce (Uhlmann v. Uhlmann, 17 Abb. N. C. 236; Schroeter v. Schroeter, 23 Hun, 230; Anon., 3 Abb. N. C. 161; Rice v. Rice, 22 Wkly. Dig. 258), and that the court was not authorized to examine the case upon the merits, or review the rulings upon the trial (Ross v. Ross, 31 Hun, 140; Ryerson v. Ryerson, 55 Hun, 191, 7 N. Y. Supp. 726). Some of the cases went further, and held that the court was empowered to refuse judgment where the proof was insufficient to sustain the referee's findings. Blott v. Rider, 47 How. Prac. 90; McCleary v. McCleary, 30 Hun, 154; Harding v. Harding, 43 N. Y. Super. Ct. 27; Matthews v. Matthews, 53 Hun, 244, 6 N. Y. Supp. 589. The recent cases sustain the view that the court has power to deny judgment if the evidence and proceedings certified by the referee do not support his findings satisfactorily to the conscience of the court. Gorham v. Gorham, 40 App. Div. 564, 58 N. Y. Supp. 50; Goldner v. Goldner, 49 App. Div. 395, 63 N. Y. Supp. 431. In the case of Moore v. Moore, 14 Wkly. Dig. 255, an appeal was taken to the general term, First department, from an order denying a judgment of divorce upon the report of a referee. The defendant did not appear in the action. Upon the hearing the plaintiff was allowed to testify to certain facts tending to establish defendant's adultery, contrary to the provisions of section 831 of the Code. For this error the special term denied the application for judgment. The general term

affirmed the order. Justice Daniels, writing the opinion, says (page 256, 14 Wkly. Dig.):

"As this improper evidence was obtained from her, and the referee made his report upon the whole case, it must have entered into his conclusion; and for that reason the report itself was vitiated, and that justified the refusal to confirm it."

That case is certainly authority for the proposition that the violation of any statutory rule of evidence upon the trial is sufficient warrant for denying a judgment of divorce.

There is no reported case, so far as I have discovered, which holds that this court has the power generally to review the rulings made upon the trial, although there are remarks in the opinions in Reynolds v. Reynolds, 33 App. Div. 625, 53 N. Y. Supp. 135, and Smith v. Smith, 7 Misc. Rep. 305, 28 N. Y. Supp. 136, which convey the inference that such power resides in this court.

Having regard for the reason upon which this provision of the Code is based, viz., "to prevent a judgment being entered which would justify the consummation of a new marriage by the successful party, and the complications arising from the existence of a judgment which might be plainly erroneous" (Russell, J., in the Smith Case, page 307, 7 Misc. Rep., and page 138, 28 N. Y. Supp.), it would seem as though this court should have the plentitude of power to review possessed by the appellate court. I should not hesitate to so hold if this court could order a new trial. The authorities, however, are almost unanimous in holding that this court on this application can only grant or refuse the judgment applied for, and cannot set aside the referee's report and order a new trial. The Ross, Ryerson, Gorham, and Goldner Cases, supra; contra, the Harding Case, supra. What relief, if any, either party can obtain from the special term after a denial of judgment, is not pointed out in any of these cases, and that subject is dismissed in one of the recent cases with this remark, viz.:

"What the further practice of either party, if aggrieved, may be, we cannot decide until the question is presented to us." The Gorham Case, page 567, 40 App. Div., and page 52, 58 N. Y. Supp.

Until it is clear that the special term may order a new trial of the issues, I am unwilling to extend the power of this court under section 1229 to a review of the rulings of the referee in the admission and exclusion of evidence. If the appellate court reverses the judgment for the errors herein referred to, it has the power to grant the plaintiff the benefit of a new trial.

As no other reason exists for denying this application, judgment of divorce is granted, with costs and alimony.