## HAMMER v. EISNER-MENDELSON CO.

(Supreme Court, Appellate Term, First Department.    May 6, 1915.)

1. APPEAL AND ERROR ⬪1050—REVIEW—VERDICT—CONFLICTING EVIDENCE—INCOMPETENT TESTIMONY.

Where a verdict is based on the irreconcilably conflicting testimony of an equal number of witnesses on each side, their veracity having been questioned by neither party, it must clearly appear on appeal that no inadmissible evidence was admitted that might in any way have prejudiced the defeated party.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. ⬪1050.]

2. EVIDENCE. ⬪129—MISREPRESENTATIONS—STOCK SUBSCRIPTION—SIMILAR TRANSACTIONS.

In suit to rescind a contract to purchase stock, the admission of testimony by plaintiff as to a conversation had by him, three years after the

⬪For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

sale, with the agent who had sold him the stock, used to get before the jury statements by plaintiff as to other purchasers having been victimized by defendant, was error.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 388–393, 395–398; Dec. Dig. ☞129.]

3. EVIDENCE ☞129 — STOCK SUBSCRIPTION — MISREPRESENTATIONS — SIMILAR TRANSACTIONS.

In suit to rescind a contract to purchase stock, the admission of testimony for plaintiff, by a stranger to the action, as to representations made to him by the agent who sold plaintiff the stock, two months after such stranger had become a stockholder by purchasing through others, and three months before the interview between the plaintiff and the agent which resulted in plaintiff's purchase, was error; there being no proof that the representations made to the witness were fraudulent, although proof of similar fraudulent acts by defendant is generally admissible to show intent in such cases.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 388–393, 395–398; Dec. Dig. ☞129.]

4. WITNESSES ☞388—IMPEACHMENT—CONTRADICTION—LAYING FOUNDATION—NECESSITY.

The admission of testimony as to previous statements contradicting defendant's agent, a witness on its behalf, was improper, where no foundation had been laid therefor by calling his attention to the time and place of such statements.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1233–1242, 1246; Dec. Dig. ☞388.]

5. WITNESSES ☞383—CONTRADICTION OF TESTIMONY AS TO COLLATERAL ISSUES.

The admission of testimony as to statements contradicting defendant's agent, a witness on its behalf, was improper, where such statements concerned collateral issues only.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1224; Dec. Dig. ☞383.]

Appeal from City Court of New York, Trial Term.

Action by Julius Hammer against the Eisner-Mendelson Company. Judgment for plaintiff, and defendant appeals. Reversed, and new trial ordered.

Argued April term, 1915, before GUY, BIJUR, and PENDLETON, JJ.

Leventritt, Cook & Nathan, of New York City (I. H. Lehman and Emil Goldmark, of New York City, of counsel), for appellant.

Henry Kuntz, of New York City (Abraham P. Wilkes, of New York City, of counsel), for respondent.

GUY, J. The history of this case is substantially as follows: In July, 1909, one Elkan, then representing defendant, called upon plaintiff, practicing physician in this city, and offered to sell him some stock in the defendant company. In the course of the conversation that followed, a statement of the assets and liabilities of the company was submitted to the plaintiff, and plaintiff agreed to purchase 100 shares of the preferred stock of the company at $12.50 per share; the par value being $10. In payment, plaintiff gave $50 in cash, and twelve

6 per cent. notes, for $100 each; the first one payable August 19, 1909, one note becoming due on the 19th of each month thereafter. The first note was paid when due; but as the others matured plaintiff fell behind in his payments, this being the subject of much correspondence. Finally, in November, 1911, after a conference between Elkan and plaintiff, defendant consented to reduce plaintiff's subscription from 100 shares to 80 shares, and to apply the amounts already received to the purchase of the 80 shares, and to accept notes for $50 each, falling due in succeeding months, for the balance. This arrangement plaintiff also was unable to carry out. Finally, in April, 1913, three years later, and after plaintiff had paid $900 on account and had been credited with or had received quarterly dividends at the rate of 8 per cent. per annum, from the time of the original contract of purchase, he brought this action for the recovery of the $900 paid by him and a return of his notes remaining unpaid.

Plaintiff based his action on a rescission of his contract of purchase of stock, by reason of alleged false and fraudulent representations made to him at the time of said sale by Elkan to the effect that the defendant corporation was worth more than a million dollars, that it paid large dividends on its shares of stock, that it owned its own steamships, mills, and factories, that it had several hundred thousands of dollars in the bank, and that the value of its stock was above par. Defendant denied the making of these representations, or plaintiff's reliance thereon, and counterclaimed for the sum still due on the notes. Upon the trial plaintiff was the only witness who testified to the alleged fraudulent statements made by Elkan, and no testimony whatever was given as to the falsity of Elkan's statements; the plaintiff relying solely upon the admission in defendant's answer that it did not own any steamships, mills, or factories. Elkan positively denies making the statements ascribed to him by the plaintiff, and the only points at issue are whether or not Elkan represented to plaintiff that the defendant owned "steamships, mills, and factories, and had hundreds of thousands of dollars in the bank," and whether the plaintiff was induced by these representations and relied upon them in the purchase of the stock.

[1] The question to be determined upon the record is whether or not the plaintiff has sustained the burden of proof resting upon him, and whether the judgment in his favor is supported by the testimony. In cases of this character, where there is an equal number of witnesses on each side and a clear-cut contradiction of testimony, between persons whose veracity is not questioned by either party, the circumstances surrounding the entire transaction must be carefully considered and gleaned from the evidence, and it must clearly appear that no illegal testimony was admitted that might in any way have prejudiced the jury against the defeated party. It must be remembered that the sale of stock to plaintiff occurred in 1909, and that this action was not brought until some five years later. It is admitted that, at the time the stock was purchased by plaintiff, a statement of the financial condition of the defendant was shown to plaintiff. A copy of such statement was offered and received in evidence, and such statement shows, by

direct statement therein or omission therefrom, that defendant did not own steamships, mills, or factories, and that it did not have hundreds of thousands of dollars in the bank. There existed, therefore, a serious conflict of evidence on this vital point, as to which the preponderance was strongly in favor of defendant, so far as the competent evidence went, and the admission of incompetent evidence was strongly prejudicial to defendant.

[2] Plaintiff was allowed to testify, over objections made by defendant, to several statements alleged to have been made by him to Elkan in the course of a conversation had some time in 1912, about three years after the sale of the stock. While the plaintiff had an undoubted right to testify as to any admissions, germane to the cause of action, made by Elkan, he certainly had no right in this way to get before the jury statements made by plaintiff as to other physicians having claimed to have been "victimized" by defendant. This constituted reversible error.

[3] Again, after the defendant had rested its case, the plaintiff called, in rebuttal, one Malcolm, a stranger to the action, who was permitted, over defendant's objection, to testify to certain representations alleged to have been made to him by Elkan some two months after Malcolm had owned stock in the defendant, purchased through other persons, and some three months before the interview between the plaintiff and Elkan, which resulted in plaintiff's purchase. In an action based upon false representations, the court has a right to and must allow "proof of other and similar fraudulent acts * * * when it appears that there is such a connection between the transactions * * * that both frauds are part of the one general scheme," for the purpose of proving fraudulent intent. Boyd v. Boyd, 164 N. Y. 234, 58 N. E. 118; Hersey v. Benedict, 15 Hun, 282. If we assume, however, that the making of those other representations to Malcolm were reasonably contemporaneous with those made to the plaintiff and were made for the same purpose, nevertheless such representations must be shown to have been false and fraudulent. In this the proof was totally deficient. The erroneous admission of practically all of Malcolm's testimony, when considered in its relation to all the evidence and to the issue presented for trial, was clearly prejudicial to defendant.

[4, 5] The plaintiff's attorney attempts to justify the introduction of this testimony upon the ground that it was offered to discredit Elkan; but it was equally inadmissible upon this theory—first, because no foundation was alleged for its introduction by calling the attention of Elkan to the time when, and the place where, such alleged statements were made; and, second, it relates to matter wholly collateral to the issue, and not to any fact brought out by the examination of the adverse counsel. Carpenter v. Ward, 30 N. Y. 243.

Bearing in mind that the action is for a rescission of the contract of sale, and that there is no evidence that the stock is worth less than the amount paid for it, and that plaintiff's entire case rests upon the slender issue as to whether or not defendant represented that it owned "steamships, mills, and factories, and had hundreds of thousands of dollars

in the bank," we are of the opinion that plaintiff failed to sustain the burden of proof.

For the reasons above stated, judgment is reversed, and new trial ordered, with costs to appellant to abide the event.   All concur.