In the Matter of the Estate of HARRY HOWARD DALE, Deceased.

Surrogate's Court, Kings County, May 27, 1936.

*Harry Ahrends,* for the proponent, Edward Baruch, executor.

*Frederick A. Keck,* special guardian for Harry Howard Dale, an infant, grandchild of deceased.

*Joseph J. Speth,* for Marie Kumm, sole residuary legatee.

WINGATE, S. The present controversy raises an interesting question respecting the limitations which should properly be imposed upon an examination before trial of an opponent in a probate proceeding in which issues of fraud and undue influence have been raised.

The present decedent, who was a well-known political and judicial personage in the community, died on November 17, 1935. A purported will has been propounded, which, after the gift of $12,000 in general legacies, incorporated a specific devise of his residence to Maria Kumm and made her his residuary legatee.

The usual omnibus broadside of objections to probate has been interposed on behalf of an infant grandson, who is a statutory distributee, and Mrs. Kumm is now in process of examination before trial as an adverse party, the theory of the contestant apparently being that she was the person guilty of the practice of the alleged fraud and undue influence of which the propounded document is claimed to be the product.

It appears to be conceded that her first contact with the decedent began in or about the year 1923 when she was engaged as a nurse for the decedent's wife in her last illness; that she continued in this capacity until the death of the wife and " the following year was employed by " the present decedent " as nurse and housekeeper which position she maintained to the time of testator's death."

It is the contention of the contesting special guardian that he is entitled to examine her in respect to all matters in her life, from the date of her birth to the date of the execution of the will. Her position is that any matters prior to her first contact with the decedent are wholly irrelevant and immaterial on the main issues of fraud and undue influence, and that inquisition into them should be foreclosed. This is the issue.

Whereas it is, of course, true that the propriety and scope of an examination of an adversary before trial, " irrespective of the nature of the pleadings or the burden of proof, is a matter resting in the sound discretion of the court " (*Public Nat. Bank* v. *National City Bank*, 261 N. Y. 316, 320; *Matter of Chinsky*, 150 Misc. 274, 278), this does not warrant it in disregarding the primary limitation upon such an examination imposed by the language of section 288 of the Civil Practice Act that the only testimony the taking of which is warranted under the enactment is that " which is material and necessary in the prosecution or defense of the action." (*Matter of Zaiss*, 147 Misc. 616, 617.)

The ultimate criterion for determination respecting the propriety of any question or line of questioning propounded is, therefore, as

to whether the facts sought to be evoked would be material to the case of the questioner, or, in other words, whether they would be admissible on the trial of the issues as against objections of immateriality and irrelevancy.

The particular issues here in litigation are whether or not the propounded document was the product of specific acts or courses of conduct which the law would brand as fraudulent or as transforming the testamentary act of the testator from one which represented his own volition, to one which was coerced. (*Children's Aid Society* v. *Loveridge*, 70 N. Y. 387, 394; *Matter of Chinsky*, 150 Misc. 274, 277.)

As a purely empirical matter it is a little difficult to conceive of the manner in which acts or experiences of a person prior to the time she met the decedent or he ever heard of her existence could possibly be such as to affect his free and unrestrained volition at a subsequent date.

Fraud and undue influence, which is a species of fraud (*Matter of Schillinger*, 258 N. Y. 186, 189; *Matter of Smith*, 95 id. 516, 522; *Matter of Mullin*, 143 Misc. 256, 262), are the direct result of acts, with which intent or motive have nothing whatsoever to do. If the acts establishing the fact of the commission of such fraud are demonstrated, the resulting invalidity of the instrument is an inevitable sequence. On the contrary, however, if the acts with their resulting subversion of volition are absent, the intent of an interested party may be the most malign imaginable, yet no penalty will attach.

The inquiry, therefore, resolves itself merely into one of whether a demonstration of previous acts of a person are relevant and material circumstantial evidence on the question of whether that person performed another act, at a subsequent time, the commission of which latter act is the real issue in the case.

The statement made almost three-quarters of a century ago in *Townsend Manufacturing Co.* v. *Foster* (51 Barb. 346, 352; affd., 41 N. Y. 620) represents the basic underlying rule in this connection: " ' The business of a trial is to ascertain the truth of the allegations put in issue,' and ' no evidence is admissible which does not tend to prove or disprove the issue joined.' * * * And ' this rule excludes all evidence of collateral facts, or those which are incapable of affording any reasonable presumption or inference, as to the principal fact or matter in dispute.' "

Perhaps the leading case in this State on the subject of the admissibility of collateral facts is *People* v. *Molineux* (168 N. Y. 264), the rules of which are equally applicable in a civil case. (*Altman* v. *Ozdoba*, 237 N. Y. 218, 224.) In the *Molineux* case Judge WERNER,

quoting from *People* v. *Shea* (147 N. Y. 78, 99), noted the rule that to prove a person's guilt in respect to a particular charge " it is not permitted to show his former character or to prove his guilt of other crimes, merely for the purpose of raising a presumption that he who would commit them would be more apt to commit the crime in question."

The learned jurist notes five exceptions to this general rule, only one of which would appear to be of common applicability in connection with civil wrongs. These five exceptions are stated as follows: " Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; (5) the identity of the person charged with the commission of the crime on trial."

Since in the vast majority of torts, in which category fraud and its twin brother, undue influence, are included, motive, intent and mistake or accident are immaterial factors, it is obvious that the first three exceptions to the general rule are seldom, if ever, applicable in civil trials. In rare cases the third and fourth may be. Indeed, *Matter of Booth* (215 App. Div. 516), upon which the special guardian relies, is an apt illustration of the fourth. The limited application of this exception is, however, demonstrated by the quotation on page 518 of the rule of *Ettlinger* v. *Weil* (94 App. Div. 291, 296) that " whenever a transaction is assailed as fraudulent, evidence is admissible of other and *cotemporaneous* transactions of a similar fraudulent nature for the purpose of showing intent." (Italics not in original.) The court on the following page further notes the limitation stated in *Hall* v. *Naylor* (18 N. Y. 588, 589) that the similar frauds demonstrable are merely ones committed " at or about the same time." This limited application of the exception is also noted in *Altman* v. *Ozdoba* (237 N. Y. 218, 223) and *Boyd* v. *Boyd* (164 id. 234, 241).

That the general rule of exclusion is applied with almost complete universality is demonstrated by the most cursory review of the reported adjudications on the subject. Thus in *Ross* v. *Ackerman* (46 N. Y. 210, 211) and *Anschelewitz* v. *Rosenbloom* (173 N. Y. Supp. 100, not otherwise reported), in which the question of usury was in issue, evidence of other unconnected usurious acts by the party charged therewith was held inadmissible; in *People* v. *Teal* (196 N. Y. 372, 376) and *Goldie* v. *Goldie* (39 Misc. 389, 394) evidence of adulteries not with the named corespondent and unalleged in the pleadings was held immaterial and inadmissible; in *Kelly* v.

*Home Mutual Fire Ins. Co.* (190 App. Div. 764, 766), where recovery on a policy was defended on the ground of arson, evidence of other acts of this nature was determined to be improper. Evidence of unrelated illegal wagers and stock swindles was excluded in *Dwight* v. *Badgley* (60 Hun, 144, 146) and *Hammer* v. *Eisner-Mendelson Co.* (152 N. Y. Supp. 1003, 1006, not otherwise reported) respectively. Pursuing the subject into other civil fields, evidence that a father had assumed and paid other debts of a son was deemed improper in a suit based on a claim that the debt to the particular plaintiff had been thus assumed (*Green* v. *Disbrow*, 56 N. Y. 334, 336), and evidence of waivers of policy provisions in other cases was held inadmissible on an issue of waiver in the particular case (*Wood* v. *Poughkeepsie Mut. Ins. Co.*, 32 N. Y. 619, 623).

In the *Teal Case* (*supra*) the court, in commenting on evidence of other adulteries, said (at p. 376): " The bare statement of these facts, unrelated both in pleading and in circumstance, is sufficient to draw attention sharply to the utter irrelevancy, incompetency and *immateriality* of the false testimony solicited, to the issue tendered by the complaint in *Gould* v. *Gould.*"

The issue in all these cases and many others attaining a similar result, was solely as to whether a specified *act* had been committed. The intent there and here was wholly immaterial, since if the act was done, the perpetrator " intended the natural and inevitable result of his acts, as a pure matter of law," and " the fact that he may have been willing to commit " or have committed a similar act " one or more years before is not evidence that he did " commit the particular act in question.

It follows in the case at bar that were the contestants able to demonstrate that the person in question was an adventuress of the most depraved character who had on many previous occasions improperly prevailed upon testators to make wills beneficial to her (of which there is, of course, not even the remotest indication in the record), such a showing would not be conducive to a demonstration that she had done so on this particular occasion and the admission of such evidence would unquestionably amount to reversible error.

Since the primary object of an examination before trial is, as noted, to aid the examiner in establishing his affirmative case, it is obvious that he may not under this guise be permitted to delve into the personal affairs of the person examined which can have no possible relevancy or materiality to the issue. In the case at bar this applies to all matters affecting Mrs. Kumm prior to her first meeting with the decedent.

If the parties so desire, an order may be entered on notice in conformity herewith.