McGRATH v. CARNEGIE TRUST CO. et al.   (No. 6637.)

(Supreme Court, Appellate Division, First Department.   March 26, 1915.)

Appeal from Special Term, New York County.
Action by John M. McGrath against the Carnegie Trust Company and George
C. Van Tuyl, Jr., as Superintendent, etc.   From a judgment for plaintiff, defendants appeal.   Modified and affirmed.
Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, DOWLING,
and HOTCHKISS, JJ.

(89 Misc. Rep. 30)

In re SPOONER'S WILL.

(Surrogate's Court, Bronx County.   January, 1915.)

1. WILLS ⬤═303—PROBATE—WITNESSES.
        Under Code Civ. Proc. § 2612, relative to proof of wills, the fact that
    the witnesses to a will contradict each other does not require that probate
    be refused, especially where they have signed an attestation clause reciting a full compliance with the statute.
        [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 711–723; Dec.
    Dig. ⬤═303.]

2. WILLS ⬤═163—CONTEST—UNDUE INFLUENCE—BURDEN OF PROOF.
        In a will contest, the burden of proving that the will was procured by
    undue influence rests on the party who raises such issue.
        [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 388–402; Dec. Dig.
    ⬤═163.]

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. WILLS ⚖═155—UNDUE INFLUENCE—WHAT CONSTITUTES.
That testatrix was influenced by affection and gratitude to bequeath her property to her son, who sided with her in differences existing between her and her husband, did not constitute undue influence.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 375–381; Dec. Dig. ⚖═155.]

4. WILLS ⚖═155—"UNDUE INFLUENCE."
Before the influence exercised over testatrix constitutes "undue influence," it must be such as to destroy her free agency or suppress her independent volition, and must substitute for her will the will of another, so that the instrument no longer expresses her wishes.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 375–381; Dec. Dig. ⚖═155.

For other definitions, see Words and Phrases, First and Second Series, Undue Influence.]

5. WILLS ⚖═166 — UNDUE INFLUENCE — OPPORTUNITY FOR EXERCISE — PRESUMPTION.
That testatrix's son, to whom she bequeathed her property, was living with her, was no proof that the will was procured by undue influence; opportunity not of itself justifying the conclusion that it was availed of.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 421–437; Dec. Dig. ⚖═166.]

6. WITNESSES ⚖═202 — COMPETENCY — ATTORNEY — SUBSCRIBING WITNESS TO WILL.
In a will contest, an attorney, whom testatrix had made a subscribing witness to the will, was competent to testify to all the circumstances attending its execution.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 756, 757; Dec. Dig. ⚖═202.]

Proceedings on the probate of the contested will of Martha Spooner, deceased. Probate decreed.

See, also, 87 Misc. Rep. 170, 150 N. Y. Supp. 136.

George B. Class, of New York City, for proponent.
William R. Spooner, of New York City, pro se.

SCHULZ, S. The decedent died on the 12th day of March, 1914, leaving her surviving her husband and three sons all of full age. Her alleged will bears date the 24th day of March, 1913, and contains provisions giving, devising, and bequeathing all of her property to one of her sons, who is also named as executor. The surviving husband and one of the surviving sons filed an answer, containing the usual objections, of which those to the effect that the alleged will was not executed in conformity with the statute, that the testatrix was not of sound mind, and that the execution of the document was procured by unlawful and undue influence and coercion, were urged upon the hearings. The three attesting witnesses were the attorney who drew it, a stenographer in his office, and the wife of one of the surviving sons of the testatrix, being the son who now is one of the contestants. The alleged will has a full attestation clause attached, and the signatures of the three attesting witnesses appear beneath the same.

The testimony of two of the witnesses, to wit, the attorney and his

⚖═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

stenographer, would lead to the conclusion that the statutory requirements as to execution were fully complied with, while that of the other witness, the wife of the contestant, would tend to show that there were serious omissions, and that the steps as recited by the attestation clause which she signed were not taken. As against the testimony of the other two witnesses, who substantially agree, and which I can find no reason for doubting, I cannot give much weight to the testimony of the other witness, keeping in mind her admissions to the effect that she and the testatrix were both present in the attorney's office when she (the witness) signed, that the signature to the attestation clause, which purports to be her signature, is in fact her signature, and that she is the wife of the contesting son.

[1] The fact that she contradicts the other two witnesses is not of itself a ground for refusing to admit this document to probate. The surrogate is not bound to refuse probate because one of the witnesses testifies in contradiction to the other and against the document. Code Civ. Proc. § 2612; Trustees of Auburn Seminary v. Calhoun, 25 N. Y. 422; Rugg v. Rugg, 83 N. Y. 592; Matter of Pepoon, 91 N. Y. 255; Matter of Cottrell, 95 N. Y. 329; Matter of Bernsee, 141 N. Y. 389, 36 N. E. 314; Matter of Marley, 140 App. Div. 823, 125 N. Y. Supp. 886; Matter of Graham, 9 N. Y. Supp. 122;[1] Matter of Merriam, 16 N. Y. Supp. 738;[2] Matter of Seymour, 76 Misc. Rep. 371, 136 N. Y. Supp. 942. An attorney prepared and was present at the time of the execution of the instrument, and this would seem to raise a presumption of fact that the statutory requirements were fulfilled (Matter of Kindberg, 207 N. Y. 220, 100 N. E. 789); but even without that presumption I am satisfied from the testimony produced before me that all of the formal statutory requirements were fully complied with in the execution of the propounded document.

[2] This leaves but two other questions to be determined: Was the testatrix of sound mind? and, if so, was the execution of the paper procured by the exercise of undue influence and coercion? A number of hearings were had in this matter, and a large amount of testimony was taken. It will serve no useful purpose to analyze the same in this opinion. Suffice it to say that I am convinced that upon the day when this alleged document was executed by her the decedent was of sound mind, memory, and understanding, and not for any other reason incompetent to make a will.

On the question of undue influence it appears that the disposition made in the alleged will is not an unnatural one, under all the circumstances. The testatrix in the document itself explains why she preferred the son in question, over her other children. She says that in making the testamentary provision in favor of her son to the exclusion of her other children she did so "in the thought of his physical infirmity and of his being in consequence in greater need" of her estate than any of her other children. This son is suffering from a physical infirmity,

---

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 56 Hun, 640.

[2] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 62 Hun, 621.

and it was natural that the mother, in considering the possible disposition of her property among her children, all of whom were grown up, and all of whom were no doubt dear to her, should desire, in so far as she could do so, to help the son whose deformity made it more difficult for him to provide for himself, and hence prefer him over her other children.

[3] There are also present circumstances which explain the failure of the decedent to make her husband a beneficiary. The relations between husband and wife, as appears from the testimony, were not pleasant. It is not for this court to decide upon whom the fault for this condition rested. The fact is that it did exist, and that at the time when the document was executed it had become such that legal proceedings between the decedent and her husband were pending or were in contemplation. In the differences existing between husband and wife, the son who is the beneficiary under this alleged will sided with his mother, the decedent, and for a time prior to her death resided with her. It was natural that this should endear him still more to the decedent, and that, as a result of his faithfulness to her, her affection for him was increased, and her feelings of gratitude toward him aroused. But the influence of affection and gratitude upon her does not constitute undue influence, because if a document whose provisions are brought about by feelings of gratitude, affection, or pity were for that reason void as a last will and testament, few testamentary dispositions could be given validity. Children's Aid Society v. Loveridge, 70 N. Y. 387; Matter of Mondorf, 110 N. Y. 450, 18 N. E. 256.

[4] The influence exercised over a testatrix, before it can be said to be undue influence, must be such as destroys her free agency, as suppresses her independent volition, and substitutes for her will the will of another, so that the instrument no longer expresses the wishes and desires of the alleged testatrix, but rather the wishes and desires of another person; it must amount to coercion. Van Ness v. Van Ness, 78 Misc. Rep. 592, 139 N. Y. Supp. 485, and cases cited.

[5] Nor can I assume that there was undue influence used because the son living with the decedent may for that reason have had an opportunity to exercise it. Opportunity of itself does not justify the conclusion that the opportunity was availed of. Cudney v. Cudney, 68 N. Y. 148; Post v. Mason, 91 N. Y. 539, 43 Am. Rep. 689. Undue influence should not be presumed, and while it is true that it is not often the subject of direct proof, it must nevertheless be the subject of proof, or there must at least be evidence from which its existence may be reasonably inferred. Loder v. Whelpley, 111 N. Y. 239, 18 N. E. 874; Matter of Richardson, 137 App. Div. 103, 122 N. Y. Supp. 83; Matter of Campbell, 136 N. Y. Supp. 1086. In this matter there is no evidence which in my opinion would justify a finding that undue influence or coercion was exercised; certainly the contestants have failed to sustain the burden of proof upon this issue which under Matter of Kindberg, supra, is upon them.

[6] In the course of the trial the proponent called as a witness the attorney of the decedent, who was an attesting witness to the alleged

will, and questioned him as to conversations which he had with the decedent prior to the day when the alleged will was made, and which it appears were professional communications. The court admitted this testimony on the theory that, by making her attorney an attesting witness to the will, the objections which otherwise could have been raised to the same were waived. Since the submission of the matter, the court is confirmed in the opinion that the attorney, having been made a subscribing witness, can testify to all the circumstances attending the execution of the instrument. Matter of Cunnion, 201 N. Y. 123, 94 N. E. 648, Ann. Cas. 1912A, 834. There is a question, however, whether the attorney can testify to professional communications had with the decedent while acting as her attorney, and which do not relate to the alleged will. Matter of Bedlow, 67 Hun, 408, 22 N. Y. Supp. 290. I think the question is one that is open to discussion, because it might very well be that testimony as to professional communications between the attorney and the decedent regarding other matters than the execution of the alleged will itself, which in no wise tends to disgrace her, and which throws light upon her relations with one of the contestants, might have an important bearing upon the mental capacity of the alleged testatrix and her state of mind toward the contestant in question, and it might be argued that, by making her attorney an attesting witness, the alleged testatrix intended that he should testify to any facts within his knowledge which would sustain her testamentary disposition. As the question, however, is a close one, and as there is so much evidence in this case which in my opinion justifies the conclusions I have reached without considering the testimony of the attorney referred to, I have disregarded his testimony as to all professional communications with the decedent prior to the day on which the alleged will was made.

If I am correct in my conclusions, it follows that the propounded document must be admitted to probate as the last will and testament of the decedent.

Probate decreed.