In the Matter of the Petition of RAYMOND A. BRADLEY to Prove the Last Will and Testament of ISABEL SHIRLEY, Late of the County of Kings, Deceased.

Surrogate's Court, Kings County, June 6, 1929.

Harold St. L. O'Dougherty, for the petitioner.

Frederick N. Van Zandt, for the contestant.

John T. Curtis, for two of the next of kin.

Thomas J. Snee, for Frank V. Kelly, public administrator.

Albert Ottinger, Attorney-General, for The People of the State of New York.

Stephen E. Ryan, special guardian.

WINGATE, S. This proceeding arises upon the petition of Raymond A. Bradley to prove a certain instrument dated August 15, 1927, as the last will and testament of Isabel Shirley, deceased. The probate is contested on all the usual grounds by certain next of kin of the decedent.

The instrument in question is written on a blank form, in the handwriting of the deceased, and is signed by her and by two subscribing witnesses at the end thereof. A duly authenticated attestation clause is appended.

The testimony of the witnesses regarding the execution, publication and attestation shows a complete compliance with the requirements of the statute. The uncontradicted testimony of all witnesses to the transaction demonstrated, further, that such execution was her free, unconstrained and voluntary act, and, finally, it is conceded that at the time of its execution testatrix was of sound mind.

There remains for determination the final basis of objection, which is that the execution was procured by the fraud and undue influence of the proponent and principal legatee or of those in privity with him, and that is the real basis of the contest.

The facts respecting such alleged fraud and undue influence are substantially uncontroverted. At the time of her death Miss Shirley was approximately eighty years of age. For some years prior to 1925 her legal adviser had been Alexander Cameron, an able and highly respected member of the bar, who was associated in a legal capacity with the New York Telephone Company. Beginning about the year 1925 he delegated various acts in connection with her affairs to the proponent, Raymond A. Bradley, who was the managing clerk in the legal department of the telephone company. Promptly thereafter Bradley inaugurated a systematic campaign

to ingratiate himself with Miss Shirley, calling upon her regularly, on an average two or three times a week, making her gifts of flowers, candy and delicacies, and performing all manner of acts of service and attention. During this period her brother and sister, who were her remaining near relatives, died, leaving Miss Shirley alone, except for casual acquaintances and Bradley.

No good purpose would be served by tracing in detail the various steps by which Bradley more and more consolidated his position in her affections, or the tangible results which flowed therefrom. She gave him a general power of attorney to manage her affairs, her bank accounts were first changed from her own name to her name in trust for him and finally into his name in trust for her. These things are merely symptomatic of the utter trust and confidence which she came to repose in him.

After the death of her sister she went to live with Bradley and his wife in a house purchased in his name, to a considerable extent with her money. There she lived until the time of her death, an honored and attentively considered guest. So far as the testimony shows, her life with the Bradleys was as happy as her advancing years would permit. That she, at all times, evinced marked affection for Bradley all of the witnesses testify. She kissed him goodby on his departure and waved to him from the window; she was greatly worried if his return at night was unduly delayed; when he went horseback riding, she fretted lest he be hurt, and when the family played games in the evening she showed extreme partiality in an effort to make him win. During the latter years of her life she conducted herself in all respects toward him like a devoted mother to a favorite son.

She made several wills after the death of Mr. Cameron, all in her own handwriting, and in all Bradley was named as executor.

Whether his appropriation of the funds in her bank accounts was without her authority or whether in their final form they constituted a part of her estate, for which he must account, is in the final analysis here immaterial, except for repayment to cover debts and general legacies.

The sole question is whether the acts and conduct of Bradley constituted such fraud and undue influence as would invalidate this will.

Cases involving similar facts have frequently arisen, and the principles governing such situations are well established. A few of these will be reviewed:

In *Children's Aid Society* v. *Loveridge* (70 N. Y. 387) the court says (at p. 394): " The position of the contestants is that the execution of the will was procured by the exercise of undue influence

on the part of those who were the beneficiaries, and who, at the very time of the making of the same, were possessed of her confidence and surrounded her. In order to avoid a will, upon any such ground, it must be shown that the influence exercised amounted to a moral coercion, which restrained independent action and destroyed free agency, or which, by importunity which could not be resisted, constrained the testator to do that which was against his free will and desire, but which he was unable to refuse or too weak to resist. It must not be the promptings of affection; the desire of gratifying the wishes of another; the ties of attachment arising from consanguinity, or the memory of kind acts and friendly offices, but a coercion produced by importunity, or by a silent, resistless power which the strong will often exercises over the weak and infirm, and which could not be resisted, so that the motive was tantamount to force or fear."

The same court says in *Matter of Mondorf* (110 N. Y. 450, at p. 456): "This will was prompted by gratitude, and a will thus induced cannot, in the case of a perfectly competent testator, be said to have been obtained by what in the law is styled undue influence. There was no fraud, imposition, constraint or coercion."

To the same effect, see *Matter of Shaul* (158 App. Div. 348, 349, 350; affd., 210 N. Y. 617); *Matter of Goodhart* (173 App. Div. 256, 258); *Matter of Tymeson* (114 Misc. 643, 646), and the two illuminating opinions by Surrogate SCHULZ in *Matter of Spooner* (89 Misc. 30, 33, 34) and *Matter of Schober* (90 id. 230, 233).

The conclusion that there was, in the instant case, an absence of any invalidating undue influence is further strengthened by the fact that the will was wholly in the handwriting of testatrix, and, so far as appears, represented her undictated desires respecting the disposition of her property. In the usual case there is a strong presumption in favor of the validity of a will in holograph, although such presumption will not, of course, supply the omission of the statutory formalities of execution. As is said by the court in *Matter of Turrell* (28 Misc. 106, 107; affd., 47 App. Div. 560 and 166 N. Y. 330): "Much stress is laid on the fact that the will is holographic. I am aware that this is always a circumstance to be considered as strongly indicative of the absence of fraud or imposition, and as clearly pointing the intention of the testator * * *." (See, also, the affirming opinion of the Court of Appeals, 166 N. Y. 330, 337, and *Matter of DeHart*, 67 Misc. 13, 18.)

It is, therefore, found that the propounded instrument is entitled to probate as the last will of Isabel Shirley.

Submit decree, on notice, accordingly.