In the Matter of the Estate of MEYER CHINSKY, Deceased.*

Surrogate's Court, Kings County, January 24, 1934.

---

* See, also, 151 Misc. 129.

*Adolph Feldblum*, for the contestants.

*Sherman & Goldring*, for the proponent.

WINGATE, S. The objections to the probate upon which the issue is joined comprise all of the elements of the usual " omnibus broadside," namely, that the propounded instrument is not the last will of the decedent; that it was not executed as required by law; that at the time of its execution the decedent did not possess testamentary capacity, and that its execution was produced by fraud and undue influence. It is, of course, only in respect to the last-named issue that contestants are obliged to make an affirmative demonstration (*Matter of Mullin*, 143 Misc. 256, 258, 259), and it was formerly deemed to be the law that only in respect to matters bearing upon this issue alone were they permitted to examine the proponent. (*Matter of Zaiss*, 147 Misc. 616, 617, and authorities cited.) That the discretionary power of the court to permit an examination is no longer so fettered has, however, at last been conclusively determined. (*Public National Bank* v. *National City Bank*, 261 N. Y. 316, 318, 320; *Manufacturers & Traders Trust Co.* v. *Com. C. Ins. Co.*, 148 Misc. 604.)

As defined in *Children's Aid Society* v. *Loveridge* (70 N. Y. 387, 394), the undue influence requisite to destroy a will must amount " to a moral coercion, which restrained independent action, and destroyed free agency, or which, by importunity which could not be resisted, constrained the testator to do that which was against his free will and desire, but which he was unable to refuse or too weak to resist." It must be " a coercion produced by importunity, or by a silent, resistless power which the strong will often exercises over the weak and infirm, and which could not be resisted, so that the motive was tantamount to force or fear." (See, also, *Matter of Shirley*, 134 Misc. 413, 416, and authorities cited.)

The border line between fraud and undue influence is extremely shadowy, indeed it has been held that " undue influence is a species of fraud." (*Matter of Schillinger*, 258 N. Y. 186, 189; *Matter of*

*Smith,* 95 id. 516, 522; *Matter of Mullin,* 143 Misc. 256, 262.) Such difference as exists in popular connotation resides mainly in the conception that fraud is accomplished either by a single or a limited number of acts, while undue influence usually embraces a course of conduct.

The modes by which fraud and undue influence may be practiced are almost as numberless as the vagaries of human nature itself, and any attempt to do more than generalize respecting their factors would be fatuously futile. Suffice it to note that either must arise by reason of an association either long continued or temporary, between the testator and the one effecting the fraud or exercising the influence, during the course of which certain acts are performed by the latter which result in tricking or overcoming the free will of the former.

It follows, therefore, that in any affirmative demonstration of these related invalidating causes, a showing must be made of the acts and events of the association of the testator and the person accused of exercising the fraud or undue influence. Whereas in respect to a demonstration of actual fraud, the relevancy might not extend much beyond the actual execution of the will, this is clearly not the case in respect to undue influence in respect to which it is conceivable that a course of events commencing long anterior to the consummation of the testamentary act might possess a distinct relevancy.

The foregoing, with a single exception, disposes of the objections to the first two lines of inquiry which are directed to: "(a) Relationship and friendship between Rabbi Simon Glazer and Meyer Chinsky, the decedent," and "(b) events occurring prior to and including the execution of the alleged will of the decedent." The single exception relates to the insertion of the word " friendship " in the first ground of examination. In this connection it should be noted that where mere acts of friendship are the inducing cause of the making of a will, no undue influence is shown. (*Matter of Mondorf,* 110 N. Y. 450, 456; *Children's Aid Society* v. *Loveridge,* 70 id. 387, 394; *Matter of Goodhart,* 173 App. Div. 256, 258; *Matter of Shaul,* 158 id. 348, 349; affd., 210 N. Y. 617; *Matter of Shirley,* 134 Misc. 413, 416.) It follows that any demonstration of " friendship " between the two men is wholly immaterial in this connection. Were this the sole line of inquiry which contestants desired to pursue, it would be disallowed. Coupled, however, as it is, with their " relationship," it seems reasonably apparent that this is merely another instance of the practice which the layman believes common to all lawyers, of never using a single word where it is possible to employ two. The contestants are entitled to an examination in

respect to the relationship which existed between these two men, and, in this connection, to no more.

There remain for consideration two additional stated objects of the examination. These are:

"(c) As to decedent's mental capacity and condition, in aid of contestant's charge of fraud.

"(d) Denial of freedom of restraint and of capacity to make a will."

Proponents violently protest an allowance to contestants of an examination along these lines, correctly asserting that the burden is upon proponents to demonstrate testamentary capacity. (*Matter of Mullin,* 143 Misc. 256, 257, 258.) The mental capacity and condition of the testator in which contestants are interested is, however, a different thing from the testamentary capacity, which proponents must prove in the first instance.

All of the cases recognize that the influence which the law characterizes as " undue " is that which is necessary to transform the act of the particular testator in question from one which is free into one which is coerced. (See *Children's Aid Society* v. *Loveridge, supra.*) Obviously the extent of the influence necessary to overcome the volition of a particular individual will vary in direct proportion to his strength of mind and body. That which a normal healthy person would brush aside with ease might be more than ample to overcome the resistance of one *in extremis.* Undue influence is almost invariably provable only by circumstantial evidence, and one of the most important elements in such a demonstration is the ability of the testator to withstand any pressure which has been exercised upon him. This subject might be discussed at almost indefinite length, but such a course would be a labor of supererogation in view of its illuminating exposition by Surrogate FEELY in *Matter of Heughes* (144 Misc. 922), which is commended to all who are interested in this phase of the question.

Whereas, therefore, the court is fully sympathetic with the contestants' claim of right to inquire into the mental and physical capacity and condition of the testator as bearing upon the efficacy of any acts of fraud or undue influence which may be demonstrated, it is of the opinion that, in this connection, his " capacity to make a will " is wholly irrelevant. It is entirely conceivable that his capacity permitting him to make a valid will might be fully up to the legal requirements and yet might not suffice to enable him to withstand certain varieties of undue influence. Indeed the reverse might conceivably also be the case. This phase of the inquiry designated "(d)" is, therefore, objectionable if, as must be supposed, it is intended to encompass more than is included in "(c)."

Since the remaining portion of " (d) " respecting " freedom from restraint " is addressed solely to acts and conditions at the time of the " execution of the alleged will," it is not perceived that this is anything more than a partial repetition of " (b)." For the avoidance of any misunderstanding, therefore, " (d) " will be wholly disallowed.

Thus far the court has considered the present application solely in the light of the law as it was supposed to exist prior to the unanimous decision of the Court of Appeals in *Public National Bank* v. *National City Bank* (261 N. Y. 316). Prior to that time the rule had many times been stated that an examination of an adverse party before trial should be limited to issues upon which the inquisitor was compelled to bear the burden of proof. As now clarified, the law is settled that " the examination of a party, irrespective of the nature of the pleadings or the burden of proof, is a matter resting in the sound discretion of the court " (p. 320).

Even were it to be held that the mental capacity of the testator was not within the issues upon which the contestants have the burden of proof under the plea of undue influence, the court would, under the particular facts here present, grant them the most ample powers for preliminary inquiry into the facts and circumstances surrounding the will. The contestants are those alleged in the petition for probate to be the sole next of kin of the decedent and, except for class legacies of $500 each, were totally cut off from participation in an estate which, according to the petition of the temporary administrator, amounts to approximately $50,000. These natural distributees are non-resident aliens who, in the natural course of events, could know little or nothing of the affairs of decedent. The will, which is alleged to have been executed by the decedent on the day of his death, places his publishing business in the control of the proponent and purports to give him substantially uncontrolled discretion over the disposal of forty per cent of the profits of the business and of the entire residue of the estate after legacies apparently totalling only $1,300 in addition to an allowance for prayers for the dead.

The court of course does not in any way intimate so much as an impression relative to the validity of the will. It does, however, distinctly feel that under circumstances such as are here present, the fullest possible disclosure should be made to those who would, but for the will, be the statutory distributees of the estate, to the end that the issues may be fully and fairly tried, and the ends of justice advanced to the greatest extent possible.

Proceed accordingly.