ALBERT A. McDONALD, executor, *vs.* MARGARET MacNEIL & others.

Norfolk.     November 3, 1937. — May 26, 1938.

Present: FIELD, DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Undue Influence.   Duress.   Fraud.*

A finding that an assignment of a bank deposit was voidable because obtained by undue influence was within the scope of allegations of a petition in equity in a probate court that it was obtained while the assignor was "incapable of understanding the effect of his acts," and through the means of "false representations, duress, deceit and fraud."

Evidence of the circumstances in which a man eighty-two years of age, whose health, memory and hearing had begun to fail, transferred a savings bank account standing solely in his name into a joint account in the names of himself and a housekeeper whom he had employed shortly after his wife's death did not show that a finding that the transfer was procured by undue influence of the housekeeper was plainly wrong.

PETITION IN EQUITY, filed in the Probate Court for the county of Norfolk on April 24, 1936.

After a hearing by *McCoole, J.,* a decree for the petitioner was entered. Margaret MacNeil appealed.

*D. B. Nissenbaum,* for the respondent MacNeil.

*J. D. Smith,* for the petitioner.

QUA, J. The petition alleges that the respondent Margaret MacNeil, hereinafter called the respondent, caused the petitioner's testator, Michael L. McDonald, while he was "incapable of understanding the effect of his acts," to assign to the respondent a savings bank deposit "by false representations, duress, deceit and fraud." The nature of the evidence throughout the trial indicates that the petitioner's claim rests upon what is generally designated "undue influence" rather than upon the less subtle forms of "duress, deceit and fraud" which those words commonly suggest. See *Wellman* v. *Carter,* 286 Mass. 237, 253. But it is too late after trial to make a point of this, even if the petition does not quite charge undue influence with technical accuracy. That undue influence is commonly fraud in the larger sense has frequently been recognized and stated. *Whitcomb* v. *Whitcomb,* 205 Mass. 310. *Costello* v. *Hayes,* 249 Mass. 349, 355. And it also partakes of the nature of duress. *Freeman* v. *Teeling,* 290 Mass. 93, 95, and cases cited. The proof now falls within the broad sweep of the allegation, even if at the outset the petition might have been demurrable for lack of particularity. *Fleming* v. *Dane,* 298 Mass. 216, 218. *Arena* v. *Erler, ante,* 144, 145–146. *Mason* v. *Daly,* 117 Mass. 403, 406. *Whiteside* v. *Merchants National Bank,* 284 Mass. 165, 169.

The real question in the case is whether the finding that the assignment of the deposit was obtained by undue influence — a finding implied in the decree for the petitioner in the absence of express findings of fact — can stand. As the evidence is reported, it is our duty to decide the entire case, although weight is to be given to the findings of the trial judge as to facts, and they are not to be set aside unless plainly wrong. *Comstock* v. *Bowles,* 295 Mass. 250, 253–254, and cases cited.

In 1934 Michael L. McDonald was a man about eighty-

two years of age. He then had four sons and two daughters, all of whom had families of their own, with the possible exception of a son who was referred to as "the missing brother" and about whom very little appears, and except one daughter, who was a member of a religious order. McDonald continued to be employed until near the end of that year at his occupation as a flagman at a railroad crossing a few hundred feet from his home. His property, aside from a few minor items, consisted of his house, assessed for from $3,000 to $3,500, and the savings bank deposit of about $4,500. In 1931 he had made a will under which his entire estate, except for a small legacy, would go upon the death of his wife to the four married children with whom he appears to have continued on terms of intimacy. On June 30, 1934, his wife died. All of the evidence tends to show that he felt her loss keenly. He insisted upon continuing to live in his old home. This necessitated a housekeeper. The respondent was engaged in that capacity. She was a niece of McDonald's wife. He had known her thirty years before when she was a very young woman. She was in poor circumstances. It was agreed that McDonald should supply the house for the respondent and her son and should pay for the heating, light and gas and $5 a week toward the running expenses. The respondent came July 17, 1934. On October 24 of that year she and McDonald went to the bank, and he transferred his deposit into the joint names of himself and the respondent, so as to make it payable to either of them and upon the death of either to the survivor. G. L. (Ter. Ed.) c. 167, § 14, as amended by St. 1933, c. 334, § 1.

From this point on it is possible, we think, to take two widely divergent views of the evidence. According to the view which it would seem that the judge must in substance have adopted it could have been found that the respondent soon made herself a material if not an indispensable factor to the comfort of an old man, bowed with grief, whose health, memory and hearing had begun to fail; that he looked to her for the continuance of the home to which he still tenaciously clung; that she almost at once manifested an excessive curiosity as to his property and income and his

relations with his children; that she spoke of her own financial need; that she attempted to prejudice and to some extent did prejudice McDonald against his children; that she objected to the children calling so often and was hostile toward them; that she did not intend to let one of McDonald's daughters take care of him; that a few days before he transferred the bank deposit she suggested that she should leave him; that he was very anxious for her to stay; that on the day after he had a shock and became seriously ill she got him to sign a paper written by her authorizing her to "draw the entire amount"; that she went at once to the bank, drew out the joint deposit and immediately deposited the money again in her own name; that she thereafter denied all knowledge of his bank book, and assigned the book, which was now in her name, to her sister without consideration merely "for convenience." It could be inferred that because of his situation McDonald was vulnerable to pressure, even though his mind remained sound, and that by reason of an ascendancy which in the circumstances the respondent had acquired over him she induced him needlessly to divert to her this deposit, which represented the larger part of his estate, and which under his will would go to the children whom he would naturally wish to have it. There was evidence that she had herself stated that the McDonald boys ought to be thankful to her because "she could have the house, too."

According to the opposing view, it could have been found that McDonald's children, or some of them, were jealous of the respondent from the start and made her position so difficult that she offered to withdraw, as she had a perfect right to do; but that he replied that she had come to him in his "darkest hour" and had taken "the lump out of his throat," and that he was grateful. It could have been found that, being in good health for a man of his age and in the full possession of his faculties, he voluntarily persuaded her to remain by offering to make her his "partner" in the bank deposit if she would stay as long as he lived; and that she agreed to do this and faithfully performed her undertaking.

As between these two contentions we are unable to say

that there was no evidence in support of that which the judge accepted, or that the evidence was so overpowering on the other side that the finding was plainly wrong. *Neill* v. *Brackett*, 234 Mass. 367. *Eddy* v. *Eddy*, 281 Mass. 156. *Hoffman* v. *Hoffman*, 192 Mass. 416, 419.

As to the respondent's requests for rulings, which the judge received and acted upon, whether or not they are technically before us (see *Stoneham Five Cents Savings Bank* v. *Johnson*, 295 Mass. 390, 393), it is enough to say that the principle by which one who accepts a beneficial interest under a will is estopped to set up any claim of his own in opposition to any part of that will (*Hyde* v. *Baldwin*, 17 Pick. 303, 308) has no application here. Other requests which have been argued either relate only to fragments of the evidence not in themselves presenting separate issues (*Barnes* v. *Berkshire Street Railway*, 281 Mass. 47, 50–52) or would require a ruling as matter of law that the transfer of the deposit was valid. In any event there was no error in denying them.

*Decree affirmed.*