**Jay SMITH and Victor Sigdestad, Administrator of the Estate of Frieda Sigdestad, Deceased, and Victor Sigdestad, Plaintiffs,**

v.

**MONTANA–DAKOTA UTILITIES, Defendant and Third Party Plaintiff,**

v.

**GRAND CONSTRUCTION COMPANY, Wright-McLaughlin Engineers, A Partnership, and Lead-Deadwood Sanitary District No. 1, Third Party Defendants.**

**Civ. No. 83–5017.**

United States District Court,
D. South Dakota, W.D.

Dec. 7, 1983.

Jerry Rachetto, Driscoll, Mattson, Rachetto & Christensen, Deadwood, S.D., Thomas G. Fritz, Lynn, Jackson, Shultz & Lebrun, P.C., Rapid City, S.D., for defendant and third party plaintiff.

Frank J. Wallahan, Wallahan Law Offices, Rapid City, S.D., Grand Const. Co., third party defendant.

Robert F. LaFleur, LaFleur & LaFleur, Rapid City, S.D., for Wright-McLaughlin Engineers, a partnership, third party defendant.

Gerald D. Johnson, Banks & Johnson, Rapid City, S.D., for Lead-Deadwood, Sanitary District No. 1, third party defendant.

**MEMORANDUM ORDER**

BOGUE, Chief Judge.

This matter comes before the Court on Defendant Montana-Dakota Utilities, Inc.'s

motion *in limine* to dismiss the allegation in Plaintiffs' complaint pertaining to punitive damages.[1] For the following reasons, this Court denies Defendant's motion.

The parties to this action agree that SDCL 21-3-2 authorizes an award of punitive damages if the statutory elements are present. SDCL 21-3-2 provides:

> In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, or in any case of wrongful injury to animals, being subjects of property, committed intentionally or by willful and wanton misconduct, in disregard of humanity, the jury, in addition to the actual damage, may give damages for the sake of example, and by way of punishing the defendant.

Initially, Defendant contends that under this statute, South Dakota case law requires intentional and deliberate conduct before punitive damages may be submitted to the jury. *See, e.g., Baxter v. Campbell,* 17 S.D. 475, 97 N.W. 386 (1903) (pleadings and proof in medical malpractice case insufficient to warrant punitive damages; no malice); *Bogue v. Gunderson,* 30 S.D. 1, 137 N.W. 595 (1912) (assault and battery allegations supported inference of malice for punitive damages); *Stene v. Hillgren,* 78 S.D. 1, 98 N.W.2d 156 (1959) (meager evidence of malice in assault and battery case resulted in reduction of punitive damage award); *Hannahs v. Noah,* 83 S.D. 296, 158 N.W.2d 678 (1968) (punitive damages properly awarded for interference with farm auction sale); *Zahrowski v. Dahl,* 78 S.D. 255, 100 N.W.2d 802 (1970) (sufficient evidence to find malice supporting punitive damages in assault and battery action); *Till v. Bennett,* 281 N.W.2d 276 (S.D.1979) (punitive damages recoverable for cattle trespassing on plaintiff's land). Defendant asserts that there is no evidence of such conduct which would warrant punitive damages in the instant matter. Additionally, Defendant maintains that willful and wanton misconduct in disregard of humanity is insufficient in South Dakota to justify a punitive damage award not involving domestic animals.

The question involved in this case is a matter to be determined by South Dakota law. Although this Court may not always agree with state law, nonetheless, as a diversity court, it is bound to find and apply such state law.

In *Hannahs v. Noah,* the South Dakota Supreme Court held that the evidence was sufficient for the jury to find malice and that the trial court did not err in submitting the punitive damage question to the jury. 83 S.D. 296, 158 N.W.2d 678, 682 (1968). In that case, the defendant unjustifiedly filed and served notice of an agister's[2] lien on the plaintiff on the morning of plaintiff's farm auction sale. Because of this notice, the auction sale was delayed. Plaintiff successfully brought suit for wrongful interference with his farm auction sale.

The supreme court in *Hannahs* had occasion to examine the exact language found in SDCL 21-3-2.[3] Significantly, the court analyzed this language in the context of defining malice. The court observed:

> The rule supported by statute in this state is stated in 22 Am.Jur. 22, Damages, § 243, p. 334:
>
> "As a general rule, exemplary damages are recoverable in all actions for damages based upon tortious acts which involve circumstances or ingredients, of

---

**1.** Because Defendant seeks dismissal as a matter of law and matters outside the pleadings have been presented to and not excluded by this Court, Defendant's motion is actually one for summary judgment on *this particular issue.* Fed.R.Civ.P. 12(b).

**2.** An agister is "[a] person engaged in the business of pasturing of cattle as a bailee in consideration of an agreed price to be paid by the owner of the cattle." Black's Law Dictionary 61 (5th ed. 1979).

**3.** In quoting the similar statute, however, cited as SDC 1960 Supp. 37.1902, the *Hannahs* court specifically ellipsed out the language pertaining to injury to animals or willful and wanton misconduct, in disregard of humanity. *Hannahs,* 158 N.W.2d at 681-82.

malice, fraud, or insult, or a wanton and reckless disregard of the rights of the plaintiff."

And in the same text, § 250, p. 341:

"Malice as used in reference to exemplary damages is not simply the doing of an unlawful or injurious act, it implies that the act complained of was conceived in the spirit of mischief or of criminal indifference to civil obligations. While it has been said that the term imports a wish to vex, annoy, or injure another (*Bogue v. Gunderson*, supra, cited in note,) it does not necessarily mean mere spite, ill will, or hatred."

As recently as 1979, the South Dakota Supreme Court in *Till v. Bennett*, 281 N.W.2d 276 (S.D.1979), approved an award of punitive damages in an action for injury to cropland as a result of a trespass by the defendants' cattle. Construing SDCL 21–3–2, the court cited *Hannahs* and quoted the above-language in defining the legal standard for an award of punitive damages in South Dakota. The court specifically held that "evidence indicating a 'wanton and reckless disregard' of plaintiff's rights is sufficient to warrant the jury instruction for exemplary damages and to support the verdict." *Till*, 281 N.W.2d at 279.

It is extremely significant to note that the *Till* case did not involve a wrongful injury to animals. Yet, the court held that a punitive damage award under a "wanton and reckless disregard" standard was proper. *Id.* The *Till* court was not completely clear whether the "wanton and reckless disregard" standard is sufficient *ipso facto* as a basis for a punitive damage award, or whether "wanton and reckless disregard of plaintiff's rights" is a means of defining malice. Indeed, it may be a distinction without a difference. But, nonetheless, this Court must conclude that punitive damages are recoverable in South Dakota based upon proof of conduct that indicates a wanton and reckless disregard of the plaintiff's rights. *Id.;* SDCL 21–3–2.

Willful and wanton misconduct is something more than ordinary negligence but less than deliberate or intentional conduct. (citation omitted) Conduct is gross, willful, wanton, or reckless when a person acts or fails to act, with a conscious realization that injury is a *probable*, as distinguished from a *possible* (ordinary negligence), result of such conduct.

*VerBouwens v. Hamm Wood Products*, 334 N.W.2d 874, 876 (S.D.1983). On the basis of the present record, the Court simply is not prepared to say that as a matter of law, Defendant MDU did not act or fail to act with a conscious realization that injury to Plaintiffs was a probable result of Defendant's conduct. Defendant MDU knew there was a substantial decrease in pressure in one of its main gas lines, Carr Depo. p. 44, 50, 109; Defendant suspected the pressure drop was caused by a gas leak or a faulty regulator, Carr Depo. p. 44; Defendant was familiar with the problems of an unrepaired leak, Carr Depo. p. 115; Defendant knew that if there was a gas leak, an explosion could result, Carr Depo. p. 115; Defendant MDU 'walked the line' looking, listening and smelling for any gas leak, Carr Depo. p. 49; Defendant's employees asked people who happened along if they smelled any gas, Carr Depo. p. 107, Mohr Depo. p. 193; Defendant's employees did not use any equipment to test further for a gas leak, Carr Depo. p. 50, Lindemann Depo; Gerold Mohr tested and adjusted two regulators and then increased the pressure, Carr Depo. p. 55, Mohr Depo. pp. 100–05. From the deposition testimony of Mr. Mohr, this Court is somewhat confused as to the purpose and result of his testing procedure and subsequent adjustment of the regulators. See Mohr Depo. pp. 100–05, 110, and Carr Depo. pp. 163–65. Further testimony, including that of experts, may enlighten the Court in this regard. As a result, this Court is not satisfied from the three depositions presently before the Court that Plaintiffs can show no set of facts which would satisfy the punitive damages standard outlined above. Accordingly, it is hereby

ORDERED that Defendant's motion is denied subject to reconsideration at a later time.