**Don MOOSMEIER, individually and as Executor of the Estate of Nora Moosmeier, Deceased, Plaintiff and Appellant,**

v.

**Helene JOHNSON, Defendant and Appellee.**

**No. 15486.**

Supreme Court of South Dakota.

Considered on Briefs May 22, 1987.

Decided Sept. 23, 1987.

Wally Eklund of Johnson, Eklund & Davis, Gregory, for plaintiff and appellant.

Michael D. Stevens of Blackburn & Stevens, Yankton, for defendant and appellee; James A. Johnson Vermillion, on brief.

necessary. Remand by the habeas corpus court     is generally inappropriate.

MILLER, Justice.

Appellant seeks reversal of a $10,000 jury verdict which he argues is insufficient. We affirm.

Since this case is principally decided on procedural and legal grounds, a detailed recitation of the facts is not necessary. Briefly stated, appellant Donald Moosmeier (Donald), is the executor of the estate of his maiden aunt Nora Moosmeier (Nora) who died at age ninety-three. As executor, Donald discovered that Nora had made lifetime transfers of assets comprising nearly one-third of her $300,000 estate to appellee Helene Johnson (Helene). Donald commenced suit against Helene in a five-count complaint generally alleging that Helene was guilty of undue influence and conversion, seeking money damages, return of the property, and punitive damages. Helene denied any wrongdoing and alleged that Nora made the gifts because Donald and his family had ignored her in her elderly years and as a result she decided to distribute more of her estate to others and less to Donald. Helene testified that she had tried to discourage the gifts but Nora refused. It seems clear from the evidence that Helene was a close friend of Nora, visited her daily, and to a certain degree was involved in her business affairs.

The case was submitted to the jury by special interrogatory. The verdict form individually itemized the assets transferred and required the jury to find whether Helene had exerted undue influence over Nora in relation to each specific asset transferred. The jury returned a verdict for $10,000 damages only relating to certain municipal bonds. The trial court denied Donald's motion for judgment n.o.v. and alternative motion for new trial and entered judgment for the $10,000 returned by the jury.

## DECISION

The first issue as generally propounded by Donald is:

WHETHER THE COURT ERRED BY FAILING TO RULE AS A MATTER OF LAW THAT TRANSFERS OF PROPERTY FROM DECEDENT NORA MOOSMEIER TO DEFENDANT HELENE JOHNSON, WHICH WERE ACTIVELY PARTICIPATED IN BY HELENE JOHNSON AND FROM WHICH HELENE JOHNSON UNDULY PROFITED, ARE VOID AS A MATTER OF LAW.

■ During the course of trial, the trial court was never asked to rule as a matter of law that undue influence was present. Although Donald did make the post-trial motions for judgment n.o.v. and alternatively for a new trial, he never moved for directed verdict at any stage of the trial.

The denial of the motion for judgment n.o.v. is not properly before us since such motions "can be considered only when the moving party at trial requested a directed verdict and thus the motion in effect brings before the trial court for review a second time the grounds urged in support of the motion for directed verdict." *Kohlman v. Veit*, 409 N.W.2d 125 (S.D.1987), citing *Parham v. Dell Rapids Township in Minnehaha County*, 80 S.D. 281, 284, 122 N.W.2d 548, 550–51 (1963); *Oliveras v. American Export Isbrandtsen Lines, Inc.*, 431 F.2d 814 (2d Cir.1970); *Hubbard v. White*, 755 F.2d 692 (8th Cir.1985), *cert. denied*, 474 U.S. 834, 106 S.Ct. 107, 88 L.Ed.2d 87 (1985). *See also Sabag v. Continental South Dakota*, 374 N.W.2d 349 (S.D.1985).

Error in denying the motion for new trial was not argued before us, and therefore is deemed waived. SDCL 15–26A–60(6); *Arens v. Arens*, 400 N.W.2d 900 (S.D.1987); *Shaffer v. Honeywell, Inc.*, 249 N.W.2d 251 (S.D.1976); *Schumacher v. R–B Freight Lines*, 73 S.D. 535, 45 N.W.2d 458 (1950).

The second issue presented by Donald is:

WHETHER THE COURT ERRED BY GIVING INSTRUCTION NUMBER 15 TO THE JURY, WHICH STATED "THE CLOUD OF UNDUE INFLUENCE MAY BE REMOVED BY SHOWING THAT NORA MOOSMEIER HAD INDEPENDENT ADVICE, THAT WAS NEITHER INCOMPETENT OR PERFUNCTORY," WHEN THE GIVING OF SUCH INSTRUCTION WAS UNSUPPORTED BY THE EVIDENCE.

■ It is the settled law that a jury should be given only those issues which find support in the record. *Kase v. French*, 325 N.W.2d 678 (S.D.1982); *Black v. Gardner*, 320 N.W.2d 153 (S.D.1982); *State v. DuBray*, 298 N.W.2d 811 (S.D. 1980); *Egan v. Scheffer*, 86 S.D. 684, 201 N.W.2d 174 (1972); *Davies v. Toms*, 75 S.D. 273, 63 N.W.2d 406 (1954).

■ Here, there is ample evidence in the record to warrant the giving of instruction 15. Attorney John DeVany was closely involved with Nora's financial arrangements and was aware of most of the transactions as they occurred, with the possible exception of the municipal bond transfer upon which the verdict was rendered. He generally testified that his duties to Nora included being

> her financial adviser, someone who would take care of her routine financial affairs, take care of her investments, helping collect her rent, farm income, doing her banking for her, and other legal work that might be involved in her affairs, such as drawing contracts for her, renting her house, her property in town, and preparing contracts for those.

The fact that Nora did not consult with Mr. DeVany on each specific transfer or did not agree with or follow all of his advice is not dispositive. *Kase, supra.* That was something for the jury to consider in light of all of the other evidence in the case in arriving at its ultimate verdict on the specific transfers. The fact remains that she often received independent advice that was neither incompetent nor perfunctory.

> The last issue framed by Donald was: WHETHER THE COURT ERRED AS A MATTER OF LAW IN STRIKING PLAINTIFF'S DEMAND FOR PUNITIVE DAMAGES.

■ At the close of the evidence, the trial court granted Helene's motion to strike Donald's request for punitive damages. Two salient statutes allow punitive damages. SDCL 30–17–8 provides:

> In any action now or hereafter pending to recover property of the decedent or his estate ... the judgment may include, in addition to the value of such property, a sum not to exceed the value thereof, as punitive damages, in the discretion of the court or the jury.

SDCL 21–3–2 also provides for punitive damages as follows:

> In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, or in any case of wrongful injury to animals, being subjects of property, committed intentionally or by willful and wanton misconduct, in disregard of humanity, the jury, in addition to the actual damage, may give damages for the sake of example, and by way of punishing the defendant.

In light of the foregoing statutes standing alone, and *Black v. Gardner, supra,* the issue of punitive damages could have been submitted to the jury. Since the jury found that undue influence had been exerted over Nora involving the transfer of the municipal bonds, the jury could also have had the opportunity to consider an award of punitive damages on that claim. A finding of undue influence indicates that fraud *may* have occurred. *In re Snowball's Estate*, 157 Cal. 301, 107 P. 598 (1910); *In re Shell's Estate*, 28 Colo. 167, 63 P. 413 (1900); *Van Ginkle v. Mooy*, 104 Ind.App. 282, 10 N.E.2d 759 (1937).\* That portion of Donald's complaint, seeking exemplary damages, alleges undue influence, oppression, and malice. Nowhere in that cause of action, nor for that matter nowhere in the complaint, is there an allegation that Helene committed a fraud. Fraud must be stated with particularity under SDCL 15–6–9(b). The terms "fraud" and "undue influence" are not specifically synonymous. *Link v. Link*, 278 N.C. 181, 179 S.E.2d 697 (1971); *Daniel v. Etheredge*, 191 Ga. 793, 13 S.E.2d 763 (1941); *Cooper v. Agee*, 222 Ala. 334, 132 So. 173 (1931); *In re Shell's Estate*, 28 Colo. 167, 63 P. 413 (1900). In

---

\* Helene's position that in addition to fraud there must be a showing of willful and wanton mis- conduct, in disregard of humanity, is untenable. Helene simply misreads the statute.

order to recover on a civil claim, a party must make the appropriate allegations upon which relief can be based. *Schwartz v. First Nat. Bank in Sioux Falls,* 390 N.W.2d 568 (S.D.1986); *Baker v. Jewell,* 77 S.D. 573, 96 N.W.2d 299 (1959); *Kindley v. Williams,* 76 S.D. 225, 76 N.W.2d 227 (1956); *Linder v. Combustion Engineering, Inc.,* 342 So.2d 474 (Fla.1977); 61A Am.Jur.2d *Pleading* § 384 (1981); 4 Am. Jur.2d *Appeal & Error* § 546 (1962).

In our view, because there was no allegation of fraud and because the record is devoid of any showing that Helene was guilty of oppression or malice, the trial court properly struck the claim for exemplary damages.

Affirmed.

WUEST, C.J., and MORGAN, J., concur.

HENDERSON, J., concurs in part and dissents in part.

SABERS, J., concurs in part and in result in part, and dissents in part.

HENDERSON, Justice (concurring in part and dissenting in part).

I concur on Issues I and II, but dissent as to Issue III.

On the punitive damage issue, the majority opinion vaults technicality (form) over substance. It is implicit, within the finding by this jury of undue influence, that fraud might well have been perpetrated upon the aggrieved. Further, the language contained in *Hannahs v. Noah,* 83 S.D. 296, 303, 158 N.W.2d 678, 682 (1968), provides precedent in this Court for the submission of punitive damages to the jury. It states: " '[E]xemplary damages are recoverable in all actions for damages based upon tortious acts which involve *circumstances or ingredients, of* malice, *fraud,* or insult, or a wanton and reckless disregard of the rights of the plaintiff.' " *Id.* (quoting 22 Am. Jur.2d *Damages* § 243, at 334 (1965) (emphasis added)).[1]

Within the following holdings of this Court, plus one federal decision, I would take comfort that a jury question existed in this case on exemplary damages. *Smith v. Montana-Dakota Utils.,* 575 F.Supp. 265 (D.S.1983); *Gross v. Kouf,* 349 N.W.2d 652 (S.D.1984); *K & E Land & Cattle, Inc. v. Mayer,* 330 N.W.2d 529 (S.D.1983); *Black v. Gardner,* 320 N.W.2d 153 (S.D. 1982); *Hulstein v. Meilman Food Indus.,* 293 N.W.2d 889 (S.D.1980); *Till v. Bennett,* 281 N.W.2d 276 (S.D.1979).

Chief Judge Bogue, in *Smith,* 575 F.Supp. at 266–67, wrote:

In *Hannahs v. Noah,* the South Dakota Supreme Court held that the evidence was sufficient for the jury to find malice and that the trial court did not err in submitting the punitive damage question to the jury. 83 S.D. 296, 158 N.W.2d 678, 682 (1968). In that case, the defendant unjustifiedly filed and served notice of an agister's lien on the plaintiff on the morning of plaintiff's farm auction sale. Because of this notice, the auction sale was delayed. Plaintiff successfully brought suit for wrongful interference with his farm auction sale.

The supreme court in *Hannahs* had occasion to examine the exact language found in SDCL 21–3–2. Significantly, the court analyzed this language in the context of defining malice. The court observed:

The rule supported by statute in this state is stated in 22 Am.Jur. 22, Damages, § 243, p. 334:

"As a general rule, exemplary damages are recoverable in all actions for damages based upon tortious acts which involve circumstances or ingredients, of malice, fraud, or insult, or a wanton and reckless disregard of the rights of the plaintiff." And in the same text, § 250, p. 341:

"Malice as used in reference to exemplary damages is not simply the doing of an unlawful or injurious act, it implies that the act complained of was conceived in the spirit of mischief or of

---

**1.** A pleader is required, under SDCL 15–6–9(b) to plead the *"circumstances* constituting fraud or mistake ... with particularity." (Emphasis added.)

criminal indifference to civil obligations. While it has been said that the term imports a wish to vex, annoy, or injure another (*Bogue v. Gunderson,* [30 S.D. 1, 137 N.W. 595 (1912)]) it does not necessarily mean mere spite, ill will, or hatred."

As recently as 1979, the South Dakota Supreme Court in *Till v. Bennett,* 281 N.W.2d 276 (S.D.1979), approved an award of punitive damages in an action for injury to cropland as a result of a trespass by the defendants' cattle. Construing SDCL 21–3–2, the court cited *Hannahs* and quoted the above-language in defining the legal standard for an award of punitive damages in South Dakota. The court specifically held that "evidence indicating a 'wanton and reckless disregard' of plaintiff's rights is sufficient to warrant the jury instruction for exemplary damages and to support the verdict." *Till,* 281 N.W.2d at 279. (Footnotes omitted.)

SDCL 53–4–7 deals specifically with "undue influence." It provides:

Undue influence consists:

(1) In the use, by one in whom a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him; or

(2) In taking an unfair advantage of another's weakness of mind; or

(3) In taking a grossly oppressive and unfair advantage of another's necessities or distress.

This statute was quoted in *Black v. Gardner,* 320 N.W.2d 153, 156 n. 1 (S.D.1982).

According to D. Dobbs, *Handbook on the Law of Remedies* § 3.9, at 204–05, 208 (1973), punitive damages may be awarded if the plaintiff has established, on the part of the defendant "a sufficiently aggravated piece of misconduct ... plus a culpable state of mind...." *Id.* at 208. Dobbs notes that

courts have developed a large vocabulary to describe the kind of mental state required—the defendant must be "malicious", "reckless", "oppressive", "evil", "wicked", or guilty of "wanton misconduct," or "morally culpable" conduct.... [A]lmost any term that describes misconduct coupled with a bad state of mind will describe the case for a punitive award.

*Id.* at 205.

Can "undue influence" involve, be, coexist with, touch upon, or partake of "fraud"?

"Undue influence" is a species of "fraud." *In re Chinsky's Will,* 150 Misc. 274, 268 N.Y.S. 719 (1934); *Taylor v. Klahm,* 8 Mich.App. 516, 517–18, 154 N.W.2d 529, 530 (1967).

"Undue influence" is a species of constructive fraud. *Eldridge v. May,* 129 Me. 112, 114–16, 150 A. 378, 379 (1930).

"Undue influence" is commonly "fraud" in the larger sense, and also partakes of the nature of "duress." *McDonald v. MacNeil,* 300 Mass. 350, 352–53, 15 N.E.2d 460, 461 (1938).

"Undue influence" is a species of constructive fraud which the courts will not undertake to define by any fixed principles, lest the very definition itself furnish a finger-board pointing out the path by which it may be evaded. *Stewart v. Marvin,* 139 Cal.App.2d 769, 774–75, 294 P.2d 114, 118 (1956).

"Undue influence" in determining fraud is a fraudulent influence over the mind and will of another to the extent that the professed action is not freely done but is in truth that act of one who procures the result. *In re Estate of Loftin,* 285 N.C. 717, 721–22, 208 S.E.2d 670, 674 (1974).

Defendant, while acting in a confidential relationship, took from the safety deposit box of the elderly plaintiff, $10,000 in City of Watertown Industrial Development Revenue Bonds. She then put them in her own safety deposit box. Later, she said they were "gifts"; the jury said otherwise.[2]

---

**2.** Attorney John DeVany represented the elderly plaintiff. Defendant's testimony at trial

claimed that the attorney had knowledge of his client giving permission to remove the bonds

"Circumstances of fraud"? Yes. "Ingredients of fraud"? Yes. "Wanton or reckless disregard of the rights of plaintiff"? Yes. "The purpose of awarding punitive damages is to punish the wrongdoer." *Hulstein*, 293 N.W.2d at 892. This jury found the defendant to be a wrongdoer. A reading of SDCL 21–3–2, set forth, *in extenso*, in the majority opinion, reflects, *inter alia*, "oppression, fraud, or malice, *actual or presumed*...." (Emphasis added.) Said statute further provides for giving additional damages "for the sake of example, and by way of punishing the defendant." Under these circumstances, the trial court should have submitted the issue of punitive damages to the jury.

SABERS, Justice (concurring in part and in result in part, and dissenting in part).

I concur in result only on the first issue because I would affirm on the merits. I concur on the second issue. I would reverse and remand on the third and last issue because the issue of punitive damages *should* have been submitted to the jury. *Black v. Gardner*, 320 N.W.2d 153 (S.D.1982); SDCL 30–17–8; SDCL 21–3–2. Since the jury found that Helene exerted undue influence over Nora resulting in liability of $10,000 involving the transfer of the municipal bonds, the jury should have had the opportunity to consider punitive damages at least on that claim. For the trial court to strike plaintiff's demand for

punitive damages as a matter of law was error. *Black, supra*.

The majority opinion states: "Fraud must be stated with particularity under SDCL 15–6–9(b). The terms 'fraud' and 'undue influence' are not specifically synonymous." They do not have to be "specifically synonymous." Both rise to a sufficient level to support liability for wrongdoing and a jury instruction on punitive damages. The complaint alleged undue influence, oppression, and malice. If this pleading was insufficient or uncertain, a motion for a more definite statement could have been demanded by Johnson, but was not. Therefore, the pleading was apparently sufficient for Johnson. The pleading was also sufficient to support the jury's determination of liability. Therefore, it was also sufficient for punitive damages.

Undue influence necessarily involved fraud and oppression here because it constituted taking advantage of a superior position. Even if it is not automatically fraudulent or oppressive, it certainly is a jury question. *Black, supra*.

---

from the safety deposit box and having them transferred unto defendant. Attorney DeVany

vehemently contradicted this testimony.